## DIMOND vs. HENDERSON, imp.

EQUITY: PARTNERSHIP: EVIDENCE: INTEREST. *(1) What rights of partners to be determined on dissolution. (2) Burden of proof as between partners. (3) Evidence as to partnership accounts. (4) When partner chargeable with interest.*

1. In an action for dissolution of a firm consisting of four members, it was error to determine the rights and liabilities, as between themselves, of two members of the firm, growing out of their relations *as partners in another firm*, consisting of those two only.

2. The maxim, *Omnia præsumuntur contra spoliatorem,* applied to a defendant who, being employed upon a salary to keep the books of the firm of which he was a member, kept them in such a manner as to render it impossible to determine correctly the state of the accounts between the partners.

3. It appearing, in such a case, that goods sold by weight or measure were taken from the store to be used in said defendant's family, without having been weighed or measured, and that the accounts as shown by the books could therefore not be relied upon as accurate in that respect, the referee for trial did not err in resorting to other sources of information in order to get at the real amount and value of goods so used.

4. While it is the general rule that one partner is not chargeable with interest on moneys of the firm in his hands, until a balance has been struck or an accounting had *(Marsh v. Fraser,* 37 Wis., 149; *Yates v. Shepardson,* 39 id., 173), yet, where one partner kept the account books, and knew, or ought to have known, the precise amount in his hands belonging to the firm, and made at one time what purported to be a full statement of the business, which was incorrect: *Held,* that there was no error in charging him with interest.

APPEAL from the Circuit Court for *Door* County.

Action for an accounting between partners and a dissolution of the partnership. The case is stated in the opinion. The defendant *Henderson* appealed from the judgment.

Brief for the appellant by *Hudd & Wigman,* and oral argument by *Mr. Hudd* and *O. F. Weed.*

Briefs for the respondent by *Ludwig & Somers,* and oral argument by *Mr. Somers.*

COLE, J. This action was brought for the dissolution of the copartnership of Henderson, Coon & Co., a firm doing busi-

ness at Sister Bay, Door county, and for winding up and set-
tling the affairs of that partnership. The firm was composed
of *Dimond*, the plaintiff, H. E. Coon, deceased (who is repre-
sented by his administrator, M. W. Coon), and the defendants
*Henderson* and *Wilson*. The two former members of the
firm were each entitled to one-third interest in the concern;
*Henderson* and *Wilson* owned the other third. At the same
time *Henderson* and *Wilson* were doing business at Palmyra,
under the firm name of Henderson & Wilson. On the trial
of this cause the business transactions of the latter firm seem
to have been largely inquired into, and an unfortunate attempt
was made, as we regard it, to adjust the affairs of that firm by
the judgment rendered in this action. Of course it was com-
petent for the court in this suit, on the dissolution of the
partnership of Henderson, Coon & Co., to determine the rights
and liabilities of the members of that firm as between them-
selves, and to distribute the partnership property to those who
were entitled thereto, according to their respective shares. But
it could only lead to confusion to attempt at the same time to
settle the affairs of Henderson & Wilson, and to adjust the
rights of the partners of that firm in its property. Conse-
quently, so much of the judgment of the circuit court as ad-
judges that the defendant *Z. Wilson* have and recover of the
defendant *A. Henderson* the sum of $2,377.97, as his share of
the copartnership funds now in said *Henderson's* hands, we
deem erroneous. This may possibly be the true amount which
would be found due *Wilson* from *Henderson*, growing out of
their private dealings or the business transactions of the Pal-
myra firm, but it has no connection with this suit and should
not enter into the accounting here made. It will be seen that
by the articles of copartnership of Henderson, Coon & Co.,
*Henderson* and *Wilson* were entitled to a one-third interest in
the property real and personal of that concern, and to a like
share of the profits of the business. The plaintiff and the
estate of H. E. Coon were each entitled also to a third of the

same. There would seem to be no difficulty in distributing the effects and property of that firm upon that basis, leaving the affairs of the partnership of Henderson & Wilson to be adjusted in a distinct suit, should this become necessary. In stating the account of the partners as between themselves, it would obviously be correct that each should be charged with all the debts and moneys which he owes, or is accountable for, to the partnership of Henderson, Coon & Co.

The referee found from the evidence produced before him, that there was in *Henderson's* hands, belonging to the firm of Henderson, Coon & Co., the sum of $2,268.37. With the exception of one item, which we think should be credited to *Henderson*, we are not prepared to disturb this statement. There is an item of $314.50 on page 151 of the ledger, according to exhibit 11, which is made up of charges against *Henderson*, and which, the referee says, does not appear from the books ever to have been deducted from his credits. But this is a mistake, as was clearly pointed out by the learned counsel for *Henderson* on the argument; for on the same page of the ledger it plainly appears that this sum of $314.50 was deducted from the aggregate credit of *Henderson* amounting to $2,047.74, leaving the "balance due," as there stated, of $1,733.74. This sum of $314.50, therefore, should be deducted from the amount found by the referee to be in *Henderson's* hands belonging to the firm.

It is barely possible that there is error in some of the other findings of the referee, which does injustice to *Henderson;* but we are unable to tell wherein it consists, if such there be. And this arises from the fact that the books of the firm, which were introduced on the trial, were kept in such a confused and unintelligible manner that it is impossible to get at the real state of the accounts. The business of the copartnership was entrusted entirely to the management and control of *Henderson*. He was paid a salary for keeping the books and transacting the business in a proper manner, and if he kept the books

so imperfectly and badly that the true state of the accounts and the transactions of the firm cannot be ascertained from them, it is but fair that every presumption to his disadvantage should be adopted. It is a case where the maxim, *Omnia præsumunter contra spoliatorem*, should be applied, for it is wholly his fault that the means of ascertaining the truth are not furnished by the account books themselves. The learned counsel insists that the referee had no right, upon the testimony before him, to charge *Henderson* with any more for supplies and provisions for the support of his family than the amount which appears upon the books of the firm. But there is ample evidence tending to show that there were groceries and provisions taken from the store of the firm, for the use of *Henderson's* family, which were not weighed, measured or charged. The referee has gone into a quite minute examination of *Henderson's* account for groceries, provisions, clothing, etc., which were used for the support of his family during the three years he had charge of the copartnership business at Sister Bay, and reached the conclusion that the amount shown by the books is quite inadequate for the purpose. We are not inclined, under the circumstances, to disturb the finding of the referee upon that point; for when it appears that goods were taken from the store which were not measured or weighed, and which were used in the defendant's family, it is impossible to rely upon the account as being accurate. From the nature of the case, other means or sources of information had to be resorted to to get at the truth of the matter; and that was what was done by the referee. The same remark may likewise be made with regard to the finding as to the amount which should be charged *Henderson* for servants' wages. The account of that matter is quite confused, and, notwithstanding the ingenious explanation of counsel with regard to it, is of that character that raises a violent presumption that it is not worthy of credit. We have already said it was the duty of *Henderson* to have kept accurate and intelligible accounts of all the trans-

actions of the firm. The fact that he failed to do this furnishes a strong inference against him. The referee charged *Henderson* with $20 for the board of an insurance agent, which had been improperly charged to the firm. It is admitted that this item should not be in the firm account, and the statement of *Henderson* that the firm had received credit for it in some freight charges was disregarded. There was no error in this finding of the referee.

There remains only one other matter in the report of the referee which we deem of sufficient importance to require notice. *Henderson* was charged with interest at the rate of seven per cent. upon the money in his hands belonging to the firm, for the time he held it. It is said that this was error; that in no event could he be charged with interest until a balance had been struck or an accounting had. In many cases this would undoubtedly be so, as this court decided in *Marsh v. Fraser*, 37 Wis., 149, and *Yates v. Shepardson*, 39 Wis., 173. But the reason of the rule fails here, because *Henderson* kept the account books, and knew, or had the means of knowing, the precise amount which he held in his hands belonging to the firm. He even professed to make a full statement of the property, profits, losses and condition of the firm at the closing of the business in the fall of 1874, which he gave to his copartners, but which statement was found not to be correct. Under these circumstances we therefore think it was not necessary that any formal balance should be struck in order that he might ascertain just what he had belonging to his copartners. He could have ascertained it, and paid over the amount, had he been disposed to be just.

In a case where one partner had withdrawn funds from the partnership contrary to the articles of copartnership, and employed them in trade, Chancellor KENT required him to account not merely for interest, but for the profits of that trade. *Stoughton v. Lynch*, 1 Johns. Ch., 467. This case comes fully within the spirit and reason of that decision. We

therefore think it would be right to charge *Henderson* with interest upon the money in his hands.

We do not deem it necessary to make any further comments on the case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment on the report of the referee in accordance with the views expressed in this opinion.

