KNAPP vs. EDWARDS.

*February 20 — March 13, 1883.*

PARTNERSHIP: ACCOUNTING: PRACTICE. *(1, 2) Presumption* contra spoliatorem. *(3) Restatement of account by supreme court. (4) Case stated: partnership agreement construed. (5) Judgment: costs.*

1. The rule *omnia præsumuntur contra spoliatorem* is for wrong-doers, and should not be applied to a case where the failure to perform a duty is due solely to incapacity. *Dimond v. Henderson,* 47 Wis., 172, distinguished.

2. So *held*, in an action for an accounting by one partner against another who had covenanted to keep correct books of account but had failed to do so because incompetent, the plaintiff having known such incompetency and having condoned or waived it.

3. In such action the referee in stating the account having applied the rigorous rule of presumption against the defendant, this court, to obviate the necessity for a new trial, restates the account.

4. An account of partnership transactions being stated in an action, it appears that there have been no profits and no losses other than the destruction of the firm property by fire; that the firm has no. assets (except real estate not considered in the accounting) and no debts; that the investment of the plaintiff is fully accounted for by sums drawn out by him and by the loss by fire, and that the defendant had advanced a larger amount than the plaintiff. *Held*, that, though by the agreement the parties were to furnish the same amount of capital and losses were to be equally divided, the plaintiff is not chargeable for any sum beyond his investment.

5. In an action by one partner against another for an accounting, though it appears on the trial that nothing is due to the plaintiff, yet if the defendant had unreasonably neglected to render an account to which the plaintiff was entitled, the complaint should not be dismissed, but there should be a judgment adjusting the rights of the parties, and the court may, in its discretion, impose the costs upon the defendant.

APPEAL from the Circuit Court for *Dunn* County.

Action for an accounting and adjustment of a partnership business.    In November, 1866, the parties entered into a copartnership for the purpose of carrying on the business of manufacturing doors, sash, blinds, and other articles,— such partnership to commence January 1, 1867, and to continue five years.    Each partner was to furnish $5,000 of capital, and profits and losses were to be shared equally between them.    The partnership agreement contains the following stipulations: " It is understood and agreed that the said *John F. Edwards*, party of the first part, shall superintend and manage the business of said firm, consulting the said *John H. Knapp*, party of the second part, in all purchases of real estate or large outlay of capital from time to time for the use and behoof of the firm.    The said *John F. Edwards*

shall receive from the profits of the firm the sum of $1,000 per annum as compensation for his said superintendence, skill, and management of the entire business of said firm; and he shall keep, or cause to be kept, just and correct books of account, wherein shall be entered all purchases and sales, all moneys received and paid out, and all other matters appertaining to said business that should be entered in books of account, which books shall be open for the inspection of either partner at any time; and an annual statement of the effects, affairs, finances, and gains or losses of said firm shall be made on the 1st day of January of each year."

.It was further agreed that at the end of such term each partner should render to the other full, true, and final accounts of partnership matters, and in all things well and truly adjust the same.

The business was continued until April 20, 1871, at which time the mill, machinery, and property of the firm were destroyed by fire. The defendant failed to keep proper books or to make the annual statements required by the agreement. The cause was tried before a referee, and his report contains a sufficient statement of the case. It is as follows:

" I find, as matters of fact, that, pursuant to the partnership agreement set forth in the complaint, plaintiff and defendant entered into a copartnership on the 1st day of January, A. D. 1867, under the firm name and style of *J. F. Edwards*, for the purpose of manufacturing doors, sash, blinds, and such other mechanical business as they might from time to time agree upon, and that said parties continued said business, which was from time to time extended to manufacturing furniture, coffins, and moulding, and to planing lumber and building, until about the 20th day of April, A. D. 1871. I find that plaintiff contributed as capital stock to said firm the sum of $6,046.25, and drew from said firm in work and materials the sum of $765.63, and that the defend-

ant contributed to the capital stock of the firm the sum of
$6,196.86. That there was contributed to said firm as a
bonus for the enterprise the real estate hereinafter mentioned
as partnership property, which was and is worth the sum of
$1,500. That during the time of said partnership dealings
there was made as profits of said business an amount no more
than equal to the compensation agreed to be paid to said de-
fendant for his superintendence, skill, and management of
the entire business of said firm.

"That on or about the 20th day of April, A. D. 1871, the
place of business, mill, shop, machinery, and other as-
sets of said firm were destroyed by fire. That the entire
loss to said firm, occasioned by said fire, was $7,461.20.
That, aside from the mutual account of the parties, the firm
has assets as follows, to wit: Block No. 45 of the village of
Menomonee, in the county of Dunn, and state of Wisconsin,
the title to which is in the name of the said firm, to wit,
_J. F. Edwards_, and is worth the sum of $1,500; refuse lum-
ber, old iron, and other personal property situate on said lot,
$25. That there are no outstanding debts against said firm.
That the plaintiff has received of partnership assets since
the dissolution of said firm, or since they have retired from
business, the sum of $450. That the defendant had exclu-
sive management and control of all the assets and transac-
tions of the firm, and received all moneys and other things
arising from the sale of manufactured stock, and for work
done, without keeping an accurate account of the same.
That from his negligent manner of keeping said accounts it
is impossible to determine the exact amount of profits during
the time said firm was in business. I find there has been no
loss in said business, except that occasioned by the fire, and
that the profits of said business have not exceeded the salary
agreed to be paid to defendant, as above mentioned. I find
that said partnership expired by limitation on the 1st day

of January, A. D. 1872, and that, aside from the accounting between the partners, all the business of said firm was settled up on the 1st day of July, A. D. 1871.

"I further report, as my conclusions of law, that the plaintiff is entitled to recover of and from the defendant the sum of $1,087.52, with interest thereon from the 1st day of January, A. D. 1872, at the rate of seven per cent. per annum, besides the costs of this action, and that said amount is, as between the parties hereto, a lien upon the assets of the firm above enumerated. That a receiver should be appointed, with the usual powers and duties, to take charge of said assets and dispose of the same under the direction of the court, and that after the payment of the above amounts to the plaintiff, the balance of the net proceeds of said sale be divided equally between the parties. I further report that I herewith transmit all the testimony taken on the trial of said action, all exhibits introduced in evidence upon said trial, except exhibits which appear to be the books of account of said firm, and have since said trial been destroyed by fire."

The report was confirmed by the court, except the judgment was required to be paid out of the defendant's half of the assets of the firm, and judgment was rendered accordingly.

The defendant appealed from the judgment.

For the appellant there was a brief by *F. J. & W. C. McLean*, and oral argument by *Mr. F. J. McLean*.

For the respondent there was a brief by *Hunt & Freeman*, as attorneys, and *S. U. Pinney*, of counsel, and oral argument by *Mr. Pinney*. They contended, *inter alia*, that if no books of account at all are kept, or if they are so kept as to be unintelligible, every presumption will be made against those to whose negligence or misconduct the non-production of proper accounts is due. 2 Lindley on Part., 809; *Wardour v. Berisford*, 1 Vern., 452; *Gray v. Haig*, 20 Beav., 219, 238, 239. Where an agent was the accounting party,

and he had rendered it impossible to ascertain the profits, by various acts, such as destroying or falsifying the books of account, he was disallowed any profits. *Gray v. Haig, supra; Dimond v. Henderson*, 47 Wis., 172; *Lupton v. White*, 15 Ves., 432; *Bevans v. Sullivan*, 4 Gill, 383; *Gage v. Parmelee*, 87 Ill., 329; Broom's Leg. Max. (4th ed.), 398.

LYON, J.   The finding of the referee that the defendant is indebted to the plaintiff, on account of their partnership business, in the sum of $1,087.52, and interest thereon from January 1, 1872, and the judgment entered in accordance therewith, can only be supported (if at all) by an application to the defendant of the maxim *omnia præsumuntur contra spoliatorem.*.

We think this is not a proper case for the application of so severe a rule.   The rule in all its rigor is for wrong-doers — for those who have been guilty of fraud or wilful disregard of duty, rather than those who have failed in capacity to perform their undertakings.   The defendant covenanted to keep proper accounts of the transactions of his firm, and failed to do so.   But there is nothing in the evidence which can justly be taken as an impeachment of his integrity, or which raises a suspicion that he wilfully failed to keep proper accounts.   Manifestly he did as well as he could, but was quite incompetent.   These considerations distinguish this case from that of *Dimond v. Henderson*, 47 Wis., 172, in which the maxim was applied in all its rigor.   But it was there applied against one who had appro-priated the property of the firm of which he was a member to his own use, without charging himself therewith, thus manifesting a criminal intention to defraud his partners. Here we have no such case.

Moreover, the plaintiff knew from the first year of the partnership that the defendant was incompetent to keep the books of the firm, and endeavored from time to time to

straighten the accounts. But he bore the defendant's short-comings in this respect with commendable good nature, until the business was terminated by the fire. This is a sort of condonation or waiver of the defendant's want of capacity as a book-keeper, and furnishes an additional reason why the defendant should not be punished for his incompetency. Hence, we conclude the case must be determined by the rules of evidence applicable to ordinary cases of accounting between partners. The findings of the referee, which were confirmed by the court, are that the plaintiff invested in the business $6,046.25, and drew out before the fire $765.63, and after the fire $450, leaving his net investment $4,830.62; that the net investment of the defendant was $6,196.86; that the profits of the business did not exceed the salary to which the defendant was entitled under the copartnership agreement; and that there were no losses except by the fire. The real estate of the firm remaining after the fire was donated to it. The same not having been paid for out of the capital paid in by the partners, its value does not enter into this accounting. That still remains the property of the firm. These findings seem to be sustained by the proofs.

It satisfactorily appears that all of the available assets of the firm remaining after the fire were required, and were appropriated by the defendant, to pay the debts of the firm, all of which have been paid. There having been neither profits made nor losses suffered, and the firm having no assets (except the donated real estate) and owing no debts, the amount invested in the business by plaintiff should be accounted for by the defendant, who had the management of the business. The only way in which he can account for it is to show that it was lost by the fire. To the proposition that it was so lost the evidence is mainly directed. The property destroyed by the fire consisted of a shop-building and engine-house, and of the machinery, tools, lumber, hardware, and ready-made stock therein. The referee and court

found that the entire loss of the firm by the fire was $7,461.20. One half of this sum — $3,730.60 — deducted from $4,830.62 (the amount invested in the business by the the plaintiff), leaves a balance of $1,100.02 of plaintiff's investment unaccounted for. If the amount of the loss is correctly stated, that balance is chargeable to the defendant. The balance is stated at $1,087.52, but the computation was made upon the erroneous basis that one half of the loss is $3,743.10, which is $12.50 more than it should be on the basis adopted. This accounts for the discrepancy.

From what has already been said, it is obvious that the controlling question in the case is, Does the evidence support the finding that the loss by the fire was only $7,461.20? It is scarcely contested that the machinery and tools destroyed cost $5,820.15. The defendant so testified, giving an itemized statement of the articles and the cost thereof. The plaintiff estimated such loss in the aggregate as not exceeding $5,000, but did not itemize his estimate. Because he did not do so, and the defendant did, the testimony of the latter is most satisfactory. The cost of the building rests entirely in estimate. The opinion of the plaintiff is that it did not exceed $1,500, while the defendant thinks it was $3,000. The building was of wood, forty by sixty-four feet, with two stories and an attic. It had stone foundations, on one side five feet high. The stone cost $8 a cord, exclusive of hauling. The whole shop was plastered, and the engine-room was double plastered. We think we shall not be far wrong if we estimate the cost of so considerable a building at the medium figure between the conflicting estimates, of $2,000. The proof is undisputed that at least $125 worth of lumber was consumed in the building

Without recapitulating the evidence as to the loss of hardware and ready-made stock, it is sufficient to say that the testimony of the defendant and his son shows a loss of these to an amount considerably exceeding $2,000. Their testi-

mony is quite full and detailed, especially as to the ready-made stock, and in the main is unassailed except by very general estimates made upon imperfect and unsatisfactory *data*. Perhaps their estimates of quantities are too large in some cases; but their estimates of specific values or cost are scarcely questioned. On the rule of evidence above stated, which discards the idea of punishing the defendant for his incompetency as a book-keeper, we think the referee and court ought to have found, and would have found, that the value of the hardware and ready-made stock destroyed by the fire was at least $1,700. We are not overturning the findings of the referee because there is a mere preponderance of evidence against them. The court will not do this. We hold only that such findings are the result of the application of a rule of evidence which should not have been applied, and hence that they cannot be upheld. . And for the purpose of saving the expense and delay of another trial, we state the results which we think must necessarily follow an application of the true rule of evidence.

Stating the account of property destroyed by the fire at the sums above mentioned, and the whole of the plaintiff's investment is accounted for. No profits having been made in the business, he is not entitled to anything further. Neither is the defendant entitled to be allowed any more than he has already received from the firm, although he invested in the business more money than did the plaintiff. This is so because the firm met with no losses other than by the fire, and hence it would be unjust to require the plaintiff, in addition to losing his whole investment, to pay several hundreds of dollars to his partner. It being settled that the firm made no profits and suffered no other loss, the plaintiff cannot be held chargeable for any sum beyond his investment.

Although there is nothing due from the defendant to the plaintiff on account of the partnership business, it does not follow that the complaint should be dismissed. It was the

plaintiff's right to have the accounts of the partnership rendered to him by his partner for adjustment, and the defendant unreasonably neglected to render the same after proper request. The plaintiff had no remedy but to bring an action for an accounting. The account should be stated as above indicated, and the judgment should be that neither partner is indebted to the other on account of their partnership transactions. The real estate of the firm, the legal title to which is in the defendant, should be adjudged to be owned and held by the parties in common; but there is no apparent necessity for a receiver. We think the circuit court will be justified in imposing the costs on the defendant, in its discretion, because his neglect made this action necessary to settle the account of the parties.

*By the Court.*— Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.