John C. Hurter & another *vs.* Charles M. Larrabee & others.

Suffolk.    March 16, 1916. — May 19, 1916.

Present: Rugg, C. J., Loring, Braley, & De Courcy, JJ.

*Partnership. Equity Jurisdiction,* Accounting between partners.

On a bill for an accounting brought by two retiring partners against the three remaining partners who were to continue the business formerly carried on by the firm, it appeared that there had been no bad faith on the part of any of the partners but- that the bookkeeping and accounting had been done under a somewhat complicated system and were full of mistakes and errors resulting apparently from lack of care and diligence, and that all the partners, (including one who by common consent in addition to having charge of a special department exercised a general oversight of the conduct of the business and of the office, the bookeeping and the accounting,) believed the business to have been prosperous and were deceived as to its real condition until this was revealed by the report of an expert accountant. A master, to whom the case was referred

"to state the accounts in accordance with the terms of the partnership," refused to make a finding as to negligence of the overseeing partner, although there was some evidence tending to show that such partner ought to have known that the books were kept badly and exhibited defects and errors. *Held,* that the refusal was proper, as the negligence of one partner had no bearing on the questions to be determined, and that under the circumstances disclosed the only course open to the master was to correct the errors so far as possible and from all credible evidence ascertain the true condition of the partnership.

So far as losses result to a partnership from errors of judgment of one partner not amounting to fraud, bad faith or reckless disregard of his obligations, they must be borne by the partnership.

In the case above stated it appeared that the termination of the partnership took effect on the first day of January of a certain year, and it was *held* that the taxes assessed upon the partnership property as of the preceding first day of April were expenses to be borne wholly by the partnership, there being nothing in the partnership agreement indicating any apportionment of such taxes between the firm and the continuing partners.

In the same case it was *held* that the expense of the expert accountant employed to examine and report on the books of the firm was charged rightly to the partnership, the results of his work being equally available to all the partners.

RUGG, C. J.  This is a bill for an accounting by two retiring members of a partnership against three remaining general partners, who hereafter will be referred to as the defendants.  The firm carried on a wholesale dry goods business of considerable magnitude.  The articles of copartnership provided, among other matters, that upon the termination of the partnership two or more of the general partners having a majority interest therein might continue the business under the firm name, and in that event should "pay to the retiring general partners, for their interest in said business, the amount standing to the credit of each of the retiring general partners on the books of the firm January 1, 1913, after the stock taking of that date, and after the interest and profit has been placed to each general partner's credit."  The three defendants elected to continue the business, and the two plaintiffs, to retire.  Disagreement as to how much should be paid to the plaintiffs caused this suit.  The case was referred to a master under a rule which required him "to state the accounts in accordance with the terms of the partnership."  Exceptions to the master's report present the questions to be decided.*  There has been no bad faith on the part of any of the partners.

---

\* The case was brought in the Supreme Judicial Court.  *Crosby,* J., made an interlocutory decree overruling the exceptions to the master's report,

The plaintiffs' first exception is to the refusal of the master to make a finding upon the negligence of the defendant Brady in supervising the accounting department of the firm. The duties of the several partners were not defined by the partnership articles, but by common consent Brady, in addition to having charge of a special department, exercised a general oversight of the conduct of the business and of the office and bookkeeping and accounting department. But the bookkeeping was in charge of one Ferguson until just before the dissolution of the partnership, when he left. Ferguson was generally trusted by all the parties. But the bookkeeping and accounting was done on a rather complicated system and was found to be full of mistakes and errors, resulting apparently from lack of care and diligence. All the partners, including Brady, believed the business to have been prosperous and were deceived as to its real condition until it was revealed by the report of an expert accountant. The master refused to make a finding as to the negligence of Brady because, although there was some evidence tending to show that he ought to have known that the books were badly kept and exhibited defects and errors, there were other facts which made that question irrelevant. The relation of Larrabee and Chandler, the other defendants, is the same as that of the plaintiffs to the books. They ought not to be made to pay to the plaintiffs for Brady's negligence. Moreover, the main duty of the master was to ascertain the actual facts as to the assets and liabilities of the firm at its dissolution, so far as these could be determined with reasonable certainty from the books of the firm. Negligence of one partner had no bearing on this issue. The basis of the accounting fixed by the agreement is the share of each partner, after interest and profit of each is found, as shown by the books. There is no general principle of partnership which renders one partner liable to his copartners for his honest mistakes. So far as losses result to a firm from errors of judgment of one partner not amounting to fraud, bad faith or reckless disregard of his obligations, they must be borne by the partnership. Each partner owes to the firm the duty of faithful service according to the best of his ability.

---

and later by his order a final decree was entered. The plaintiffs appealed from both the interlocutory and the final decree.

But, in the absence of special agreement, no partner guarantees his own capacity. Where one assumes the duty of keeping the books, reasonable presumptions are made against him when he disputes their accuracy. But when there is good faith throughout, he is not estopped to show the truth about the books even though he may have been inefficient. *Knipe* v. *Livingston,* 209 Penn. St. 49. *Knapp* v. *Edwards,* 57 Wis. 191. *Exchange Bank of Leon* v. *Gardner,* 104 Iowa, 176. *Paterson* v. *Burton,* 3 Harr. (N. J.) 526. Cases like *Hutchins* v. *Page,* 204 Mass. 284, *Costa* v. *Costa,* 222 Mass. 280, and *Wiggins* v. *Brand,* 202 Mass. 141, are not applicable for the reason that either something more than or different from mere negligence was involved, or the partners were not on an equal footing.

The basis of settlement established by the partnership articles in the present case was what was shown by the books of the partnership. But this means a set of books which was a reasonably correct representation of the firm's affairs. It did not mean books so full of palpable mistakes and grave errors as to be manifestly untrustworthy and incapable of showing justly the affairs of the firm. Under the circumstances disclosed, the only course open was to correct the errors so far as possible, and from all credible evidence ascertain the true condition of the firm. This was the course pursued by the master.

There was no error in the finding as to the cash on hand on December 31, 1912. There was a considerable discrepency between the cash shown on the books and the actual amount. As to this matter, the master found that "There is no evidence in the case that the defendants have received any benefit from the loss in cash, if there was a loss, and I find, as asked by the defendant, 'that the weight of the evidence is in favor of adopting the actual cash on hand as ascertained by Mr. Albee's [the expert accountant's] count rather than the showing of a blundering cash account, and that it is fair to assume that a full and minute investigation of all pertinent entries in the books would discover errors sufficient to account for the shortage.' Mr. Albee was of the opinion, and I think he was right, that an investigation sufficient to make the audit complete would not be warranted by the amount involved." The reasonableness of this finding is its complete support. If the books could not be relied on in this re-

spect, the only thing to do was to take the best evidence available as to the true state of the account.

In general the same principles were followed in determining what the books really showed, after making corrections for errors, as to merchandise and accounts receivable. For the same reasons no error is shown in this respect.

The taxes assessed as of April 1, 1912, rightly belonged to the firm to pay. The taxes were assessed on its property and naturally were an expense wholly to be borne by it. There is nothing in the partnership articles expressly or impliedly indicating any division of the charge for taxes between the firm and the continuing partners. The case at bar is quite different from *J. L. Hammett Co.* v. *Alfred Peats Co.* 217 Mass. 520.

The portion of expense of the accountant charged to the firm affords no ground for exception. This work was necessary in order to find an approximation to the real state of the partnership. The results of his work were equally available to all the partners. It was done for the firm as a whole and rightly was charged to it.

Exceptions numbered two, seven, ten and thirteen have been waived, and what has been said shows that no error was committed in overruling the others.

*Decree affirmed with costs.*

*R. G. Dodge,* (*H. S. Davis & F. K. Linscott* with him,) for the plaintiffs.

*G. L. Mayberry,* (*W. M. Morgan* with him,) for the defendants.