*In re* ESTATE OF JOSEPH BARBERA, Deceased—(THE NORTHERN TRUST COMPANY OF CHICAGO, Exr. of Estate of JOSEPH BARBERA, Deceased, Plaintiff-Appellant, *v.* EARLE E. FRIEDLANDER, Respondent-Appellee.)

(No. 55079; 

First District—August 14, 1972.

DIERINGER, P. J., dissenting.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, (Thomas J. Weithers, David L. Fargo, and William R. Kucera, of counsel,) for appellant.

Ida D. Schultz, of Chicago, (Sidney Z. Karasik and Ellis B. Rosenzweig, of counsel,) for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is a citation proceeding brought by the Northern Trust Company of Chicago, executor of the estate of Joseph Barbera, deceased, against Earle E. Friedlander, the surviving partner of a law partnership, for an accounting. After a trial, judgment was entered in favor of the Northern Trust Company, as executor, and against Earle E. Friedlander, in the amount of $31,830,21, from which judgment the executor appeals.

The record reveals that in 1940, Joseph Barbera and Earle E. Friedlander entered into an oral agreement to practice law as partners under the name of Barbera & Friedlander. Their practice was limited to plaintiffs' personal injury and workmen's compensation cases. Joseph Barbera was the trial man, and Friedlander handled all of the workmen's compensation cases and the initial work on the personal injury matters. Generally, Barbera did not begin to work on a case until after the answer had been filed. The evidence showed that of the partnership cases pending at the time of Barbera's death, approximately 80-85% were brought in through Friedlander's connections.

In addition to the partnership cases, each partner, at the beginning of the partnership, had cases in which he was the sole attorney, but these cases gradually diminished in numbers. Although there was no written partnership agreement, the two men shared in the net profits after pay-

ment of all expenses on a 50-50 basis. During the year prior to Barbera's death, each partner drew $200 to $250 per week. Although Barbera tried no partnership cases in the two years before his death, he was paid up until the date of his death. All of the firm's fees on partnership cases were based on contingent fee contracts. Barbera and Friedlander did not maintain any time sheets or other records to show how much time was spent on any file.

In 1957, Barbera had a heart attack, and in 1964, he suffered from cancer. Barbera died on August 28, 1965.

In September, 1965, the Barbera estate was opened. On December 7, 1965, Friedlander filed a partnership inventory, including assets, liabilities and partnership equity. It showed Joseph Barbera's capital interest in the firm as $63,418.63. On July 10, 1967, a petition for citation was filed. A corrected inventory showed the capital interest of each partner as $57,153.40. On January 18, 1969, an order was entered giving the Executor leave to hire an outside accountant to work with the accountant employed by Barbera and Friedlander.

The executor contends (1) that the trial court erred in allowing a recovery of only $31,830.21 when the record shows that Friedlander collected $445,601.53 in fees from partnership and Barbera's personal cases and the adjusted accounting filed by Friedlander showed the amount due the Executor from the capital assets as $57,153.40; (2) that the court erred in refusing to hold that Friedlander, as a surviving partner, was a trustee for the Estate, and that the burden of proof was upon him as a fiduciary to account for all monies which he had received and to show performance of his trust; (3) that the court erred in granting compensation to Friedlander for winding up the affairs of the partnership, and (4) that the court erred in refusing to enter judgment against the respondent for costs and expenses.

Both the Barbera and Friedlander partnership cases and Barbera's personal cases were based on contingent fee contracts. Black's Law Dictionary defines a contingent claim as "one which has not accrued and which is dependent upon some future event that may never happen." In practical terms, contingent fee contracts give an attorney a pecuniary interest only in the event there is a successful prosecution of the litigation. Should there be no recovery, no fees are received and all costs and expenses incurred are lost. There is some question as to whether the Estate has a right to participate in proceeds from contingent fee contracts which were concluded after Barbera's death.

The record reveals that at the time of Barbera's death, his interest in the firm's capital assets was $57,153.40, and there were 741 partnership cases pending and undisposed. In approximately four years following

Barbera's death, Friedlander collected $394,286.92 in fees and $47,699.52 in costs recovered on partnership cases. In addition, he collected $51,-314.61 in fees and $6,291.90 in advances recovered on Barbera's personal cases. Petitioner contends that these figures alone demonstrate the inadequacy of the trial court's award. But these figures do not reflect allowance for additional costs advanced by Friedlander, the overhead costs of running a law office, salaries for employees and compensation to the surviving partner in winding up the partnership affairs. The breakdown of these figures, as allowed by the trial court, is as follows:

1. Overhead expenses, salaries and other expenses.

| Year | Expenditure | Percentage allowed by Court | Allowance to surviving partner |
|---|---|---|---|
| 9/1/65 to 12/31/65 | $ 39,669.28 | 95% | $ 37,685.92 |
| 1966 | 112,572.45 | 90% | 101,315.21 |
| 1967 | 125,719.39 | 85% | 106,861.48 |
| 1968 | 100,257.12 | 80% | 80,206.10 |
| 1969 | 47,919.20 | 75% | 35,939.40 |

Total allowance for overhead, salaries and other expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$362,008.01

2. Reasonable compensation to Earle Friedlander for winding up the partnership affairs 4⅓ years at $20,000 per annum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86,666.67

3. Costs advanced by Friedlander on cases on appeal . . . . 7,168.22

Total credits allowed to Friedlander. . . . . . . . . . . . . . . . . . .$455,842.90

The total fees collected on the cases pending at Barbera's death were $445,601.53. Since the total credit allowed to Friedlander by the trial judge amounted to $455,842.90, there was a deficit of $10,241.37. After deducting certain advances which were outstanding at the time the adjusted inventory was filed, but subsequently lost, when cases were concluded without recovery, and after giving Friedlander credit for advances made after Barbera's death on partnership cases subsequently lost, the trial judge found that the total capital account was $81,639.44, of which Barbera's interest was one-half or $40,819.72. Taking into consideration costs recovered on Barbera's personal cases of $1,251 and the deficit of $10,241.37, the court found there was due the petitioner $31,830.21.

The record reveals that Barbera and Friedlander maintained a suite of offices and employed four attorneys, secretarial and clerical help and

a receptionist. The expense of maintaining these offices and employees from September 1, 1965 to January 1, 1970, was $426,137.44. The crux of the dispute between the parties is the apportionment of these overhead expenses between partnership cases and cases which were opened after Barbera's death. Petitioner alleges that the trial judge erred in allowing Friedlander, over objection, to make a "rough estimate" as to the amount of time spent on partnership cases per year in the approximately four and one-third years following Barbera's death. The Executor contends that no records were kept by Friedlander which would permit a reasonable apportionment of the overhead expenses.

It was established by the evidence that Barbera and Friedlander for over 25 years kept a general ledger, cash receipts and disbursements, a journal, card records of each case on which were recorded expenses or advances made, and a daily diary recording court appearances and depositions. No time records were kept because the fees were contingent upon recovery and not on time spent. In fact, Leo Wykell, an attorney, called as an expert witness by respondent, testified that in 30 years of experience, he knew of no plaintiff's personal injury firm which kept time sheets. Friedlander continued the same procedures after Barbera's death, and all of the relevant records were introduced into evidence in some form and properly considered by the court.

■■ Friedlander, with the help of another attorney, in his suite, reviewed five years of standard diaries. He had an index system by which he identified a case as partnership or a new case. In this way, he was able to give a "rough estimate" as to the percentage of time spent on partnership cases. Although the diaries did not record time spent, the basis of his analysis was sound, since office activity is highly correlated with court appearances and deposition schedules. The trial judge carefully considered all of the evidence and after modifying the overhead percentages made the allowances noted above. Of the total overhead expenses paid by Friedlander, the trial judge disallowed $62,145.97, an amount which adequately covered the costs and expenses of Friedlander's personal practice in the slightly over four years following Barbera's death. We perceive no error in the allowances made by the trial judge. Even in the case cited by the corporate executor (*Bennett v. Weber*, 323 Ill. 283, 296, 154 N.E.105), the court acknowledged that "proof of expenditures is not confined to the production of vouchers." Likewise proof of overhead expenditures is not limited to the production of time sheets.

It is strenuously argued that Friedlander, as surviving partner, was a trustee for the estate of his deceased partner; that as such he had a duty to keep clear, distinct and accurate records and to account to the Execu-

tor for partnership funds; that he failed to meet his burden of proving performance of his trust, and that the trial judge erred in not resolving all doubts and obscurities against him. We do not find it necessary to decide whether Friedlander was, in fact, a trustee for the Estate as to the partnership assets because the trial judge, in any case, held Friedlander to the highest possible standard of accountability. We note in passing, however, that we have reviewed the cases cited by petitioner and find that none of them was concerned with a law partnership engaged in performing contingent fee contracts.

The record discloses that from the inception of the partnership the firm's books and records were kept by David Kase, an accountant, who died in July, 1967. Shortly before his death, Kase's nephew, Jack Kase, a Certified Public Accountant, took over the supervision of the books and records. On January 26, 1968, James Delaney, a Certified Public Accountant, was engaged by the Executor to make a limited examination of the partnership accounting records. Delaney testified that in so doing, he consulted frequently with Jack Kase; that all the records he requested were made available to him, and that he found no evidence of alteration or doctoring of records.

■■ The evidence also shows that Friedlander met with the Executor's attorney and Mrs. Barbera about 90 days after Barbera's death to request that they take all of Barbera's personal files to another attorney. No such action was taken and Friedlander was left to process all of the cases by himself. As soon as practical after Barbera's estate was opened, Friedlander filed a partnership inventory. He did not withdraw any funds from the firm assets. Under these circumstances, we cannot say that the trial court held Friedlander to a lesser standard of accountability than was required.

The Executor also contends that the trial court erred in granting Friedlander compensation for winding up the partnership matters. Section 18(f) of the Uniform Partnership Act (ch. 106½, Ill. Rev. Stat. 1969, par. 18(f)), provides that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs. The Executor argues that Friedlander is not entitled to such compensation, however, because a surviving partner who commingles trust funds with his own and fails to keep distinct records forfeits his right to such compensation. There is not the slightest evidence of commingling in the case at bar. The cases cited by petitioner are inapplicable to the facts of the instant case.

■■ Mr. Wykell, called as an expert witness by respondent, estimated that an attorney of Friedlander's experience would earn between $20,000 and $35,000 per year. Taking the low figure and multiplying it by the

four and one-third years it took to wind up the partnership affairs, the trial judge allowed $86,666.67 in compensation to Friedlander. We do not see how it can seriously be contended that this award was unreasonable. We must stress that an interest in partnership assets consisting only of contingent fee contracts is clearly unlike ordinary partnership assets. We must also note that prior to Barbera's death he was the trial attorney for the firm and thereafter the Executor was satisfied to permit Friedlander alone to bring the contingent fee cases to a conclusion.

Finally, the Executor alleges that the trial court erred in refusing to charge respondent for costs and expenses, including attorney's fees and accountant's fees. Petitioner argues that a trustee who fails to keep proper accounts is liable for expenses incurred as a result of his failure. As previously stated, we do not think Friedlander failed in any duty owed to the Estate. Therefore, the trial court correctly denied petitioner's motion for costs and expenses.

A study of this entire lengthy record shows a determined and understanding effort by a conscientious trial judge to deal with a partnership accounting concerning contingent legal fees where there was no written agreement. The trial judge saw and heard the witnesses. It was a difficult and disagreeable task under the facts and circumstances before him. The decision of the trial court is supported by substantial convincing evidence and will be upheld.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

ADESKO, J., concurs.

Mr. PRESIDING JUSTICE DIERINGER dissenting:

I respectfully dissent from the majority opinion for several reasons. Throughout the proceeding in the trial court, Earle Friedlander denied that he was a fiduciary and trustee of the partnership as a surviving partner. It was not until the case came to the Appellate Court that he finally admitted the fiduciary relationship. He made a motion in the trial court, asking the court to order that the estate had no interest in the proceeds of the partnership. The motion was denied by the late Judge James Corcoran. Friedlander then took a change of venue from Judge Corcoran, and the case was assigned to another judge. Friedlander refused to recognize the rights of the estate in contingent fee contracts, although it is well settled law. *Little v. Caldwell* (Sup. Ct. of Calif., 1894), 101 Cal. 553, 36 P. 107; *Durham v. Lathrop* (1900), 95 Ill.App. 429, citing the *Little* case; *Denver v. Roane* (1878), 99 U.S. 355, 25 L.Ed.

476 and *In re Mondale and Johnson* (1968), 437 P.2d 636, 150 Mont. 534 (Sup. Ct. of Montana).

There can be no question that as the surviving partner, Earle Friedlander occupied a fiduciary relationship to Barbera's estate. (*Jackson v. Jackson* (1951), 343 Ill.App. 31; *Altschuler v. Altschuler* (1951), 410 Ill. 169.) As a result he was under a duty to account to the executor of the deceased partner for all monies received by him from the partnership (Uniform Partnership Act, Ill. Rev. Stat. 1967, ch. 106½, sec. 43; *Witkowsky v. Affeld* (1918), 283 Ill. 557.) Chapter 3, Section 189, of the Illinois Revised Statutes, relating to administration of estates, also provides that a surviving partner must account to the executor of a deceased partner. He was also under a corollary duty to keep clear and distinct records or have all doubts and obscurities resolved against him. *Nonnast v. Northern Trust Co.* (1940), 374 Ill. 248; Perry on Trusts and Trustees, 7th Ed., § 821, p. 1397.

It is uncontroverted that upon Barbera's death, Friedlander failed to keep any records which would indicate the amount of time spent on partnership cases. Friedlander testified as follows:

"Q. Very well, now, Mr. Friedlander, following the date of Mr. Barbera's death, did you keep any records in your office which would indicate in any way the amount of time spent by the various attorneys hired by you on the A-cases [cases opened before Barbera's death], the B-cases [cases opened after Barbera's death] and Mr. Barbera's personal cases?

A. Individually, no. You mean if I settled an A-case, who spent the time on the A-case or something like that?

Q. I am asking if you have any records in which you would divide this time.

A. I have no way of knowing that.

Q. You have no such record, is that correct?

A. No."

As a result of this failure, a review of the record shows an almost incomprehensible hodge-podge of testimony concerning the financial records of the partnership. None of these is a substitute for the accountings required under Section 43 of the Uniform Partnership Act, nor do they form an adequate basis for the judgment reached by the trial court.

Friedlander first filed a statement showing that Barbera's interest in the capital assets of the partnership as of the date of his death was $63,418.36. Later he filed an adjusted accounting showing the amount due the executor from the capital assets totaled $57,153.40. The capital account consisted of cash on hand, books, furniture and other physical assets. There were 741 cases pending which eventually yielded gross

revenues and recovery of advances made of $498,401.80. Friedlander claimed expenses for the collection of this money of either $417,464.77 or $426,137.94 during the four and one-half years following Barbera's death. The records are not adequate to be sure which figure is correct. However, the trial court accepted and allowed the larger figure, which to me is incredible.

After Barbera's death, Friedlander continued the practice of law in the same suite, and the record shows the number of new cases in each of those years was approximately the same as the number of cases opened per year before Barbera's death in 1965. In 1961 the partnership opened 231 law cases; in 1962, 232; in 1963, 239; in 1964, 148; and in 1965, 204. In 1966 Friedlander opened 234 law cases and 97 Industrial Commission cases. In 1967 he opened 224 law cases and 94 Industrial Commission cases. In 1968 he opened 201 law cases and 74 Industrial Commission cases. The exact figures for the years 1969 and 1970 are not in the record. During that period of time he employed four attorneys, secretaries and lay people to handle the business. He says the office expense for that period of time was $426,137.44. That the court should allow all of this expense to operate Friedlander's business and charge it against the estate for the collection of the partnership cases is, I think, completely erroneous. The figures were based on rough estimates of Friedlander because there were no records to substantiate them. In any event, they were not chargeable to the estate because Friedlander charged a fee for his services in collecting monies from the partnership cases.

A lawyer by the name of Leo Wykell testified, as an expert, that he was familiar with personal injury practice, and that a lawyer of Friedlander's ability would earn from $20,000 to $35,000 a year, yet Friedlander testified that during the years 1966, 1967 and 1968, he averaged $200,000 per year in compensation settlements and $250,000 per year in common law settlements, and he has the audacity to ask the estate to maintain his office and his employees during that period of time while he is earning that kind of money.

As further error, I point out that the record shows the ratio of expenses to gross revenue yields before Barbera's death of partnership business is as follows:

| 1961 | 64.31 |
|---|---|
| 1962 | 51.90 |
| 1963 | 56.57 |
| 1964 | 57.22 |
| 1/65-9/65 | 69.03 |

yet the court allowed 86% of the gross revenue to overhead. It was error

for the court to award both overhead and attorney's fees of $86,666 to Friedlander. An attorney who receives a fee from a client may not make an additional charge for his overhead, as that has to be part of his fee. There is no basis for the award of $86,666 because Mr. Friedlander was collecting his own money as well as that of the estate, and he claims one-half of the proceeds. It becomes quite obvious he therefore cannot be paid for collecting his own money but only for the services rendered the estate, which would be one-half of $86,666, assuming that to be a fair figure.

The Partnership Act provides that "a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs." The term "reasonable compensation" suggests that the amount of compensation be based upon the services actually performed. The record in this case fails to show much effort on his part. He testified he continued to spend 75% of his time on compensation cases opened after Barbera's death and provided no affirmative evidence of the work done on partnership cases. In addition, he continued to open approximately the same number of law cases after Barbera's death as were opened before his death. By no stretch of the imagination is he entitled to more than one-half of the fee set by the court.

I cannot accept the statement of the majority that Friedlander was held by the trial court to the highest standard of accountability. In my opinion just the opposite is true. The trial court placed the burden of proof on the estate, whereas the burden is properly on the fiduciary. (*Pidot v. Zenith Radio Corp.* (1941), 308 Ill.App. 197; *Knights of the Ku Klux Klan v. First National Bank* (1928), 254 Ill.App. 264.) I cannot conceive of how a capital account of $57,000 could be reduced to $31,000 after the collection of an additional $498,401.80 of partnership assets. I think the correct figures and computations are as follows:

Total Collections of Fees and Costs Advanced Not Including Advances Included in the Capital Account..........$451,983.43

Less Amounts Advanced Both by Partnership and Earle E. Friedlander and Not Recovered...................... 32,890.96

$419,092.47

Add Value of Capital Account at Date of Joseph Barbera's Death ... ......................................... 114,306.80

Total Interest of Partnership...........................$533,399.76

One-half of the partnership interest of $533,399.76 is $266,699.88, which belongs to the estate, and subtracting a fee of one-half of $86,666, or $43,333.33, leaves a net due the estate of $223,266.55. As I pointed out

before, the charge of the overhead cannot be allowed if he is going to get his attorney's fee. It appears to me that $223,266.55 is the correct amount in view of the capital assets and the collections made. As of this date Friedlander has not paid one penny to the estate, although a citation was issued against him. In my opinion his conduct is a flagrant violation of his capacity as a fiduciary and trustee, and such conduct has caused this litigation. He, therefore, should be charged with all costs and expenses to the estate, plus attorney's fees and accountant's fees and interest. I would enter an order against him for $223,266.55 and direct the Circuit Court to conduct a hearing as to appropriate expenses, fees, costs and interest to be added to said amount. Bogert, Trusts and Trustees, § 871; *Knapp v. Edwards* (1883), 57 Wis. 191, 15 N.W. 140; *Nonnast v. Northern Trust Co.* (1940), 374 Ill. 248, 261.