.FLORENCE E. M. WILSON *vs.* LUCY W. JONES & others.

Worcester. September 27, 1932. — October 26, 1932.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & DONAHUE, JJ.

*Deed,* Delivery, Escrow. *Wills, Statute of.*

Early in 1931, the owner of a farm discussed with a friend the matter of giving the farm to a young man, twenty years of age, who was not related to him but whom he often referred to as his grandson, and stated that he was going to deed his farm to the young man because wills are sometimes broken; that he wanted the young man to have the farm when he was gone. Thereafter he executed a deed of the farm to the young man, reserving to himself "during . . . [his] natural life, all the rents, profits, and usufruct and absolute control of the above granted tract and all growing and cut wood and timber" thereon. This deed he delivered to his friend, saying: "I leave this deed in your hands. I want you to deliver it to . . . [the young man] after my decease." About four months later, wishing to change the deed, he was advised that he could not do so without the consent of the young man, who still was under age. Accordingly, with the young man's consent, he made a new deed, like the first except that it added a clause reciting that the "premises are conveyed subject to the express condition that the grantee herein shall not alienate nor mortgage same nor permit same to be sold for taxes until January 9th, 1942," executed it and, in the presence of the young man, delivered it to the friend with instructions that he was to hold it in accordance with the same conditions attached to his holding of the original deed, which was thereupon destroyed. A month later he died testate. The premises described in the deeds were not specifically devised by his will. The young man became of age less than eight months thereafter. In a suit in equity by a residuary legatee and devisee named in the will of the testator, to have the deed declared void, it was *held,* that

(1) A finding by a master that the friend was a depositary of the first deed from the grantor and was not an agent or trustee for the grantee was warranted by the declarations of the grantor made at the time of and before the delivery of the deed to the friend;

(2) In the circumstances, the second deed, being for the grantee's benefit, vested the property in him subject to the life estate in the grantor and to any conditions in the deed unless the gift by deed was in violation of the statute of wills;

(3) The facts found warranted, if they did not require, the conclusion of fact that the grantor "intended to and did make an irrevocable deposit of the deed for the benefit of" the grantee, "to be delivered to the latter upon" the grantor's "death; that upon the execution of the deed" the grantee's "title became presently vested in the premises described therein";

(4) A further finding as an inference of fact was warranted, if not required as a ruling of law, that the friend held the second deed in a dual capacity in behalf of both the grantor and the grantee;

(5) A decree dismissing the bill was affirmed.

BILL IN EQUITY, filed in the Superior Court on November 9, 1931, and afterwards amended, described in the opinion.

The suit was referred to a master. Material findings by him in two reports are stated in the opinion. The suit was heard by *Lummus*, J., by whose order there were entered an interlocutory decree overruling exceptions by the plaintiff and confirming the reports, and a final decree dismissing the bill. The plaintiff and one of the defendants representing a like interest appealed.

*L. E. Stockwell*, (*G. R. Stobbs & C. W. Proctor* with him,) for the plaintiff.

*R. B. Dodge*, (*A. T. Saunders* with him,) for the defendants.

PIERCE, J. This is a bill in equity brought by one of several residuary legatees and devisees under the will of Guy Dudley, dated January 22, 1931, to have declared void a certain deed to Kenneth H. Buck dated May 25, 1931. After the filing of the answers of the several defendants the case, on November 20, 1931, was referred to a master, who duly made reports thereon. These reports were confirmed by an interlocutory decree, and a final decree was entered dismissing the bill with costs. The case is before this court on appeals from the interlocutory and final decrees.

The evidence is not reported. The master found in substance the following facts: Kenneth H. Buck, a minor when

the original report was filed, became of age on January 9, 1932. He had lived with the testator on the latter's farm for many years. He was not related to the testator by blood but was often referred to by him as his grandson. Sometime in January, 1931, the testator discussed with a personal friend, Benjamin A. Wakefield, whom he subsequently named as executor of his will dated January 22, 1931, the matter of giving the home farm to Kenneth H. Buck. He said that he was going to deed his farm to Buck because wills are sometimes broken; that he wanted Buck to have the farm when he (Dudley) was gone; that he wanted Wakefield to hold the deed and deliver it to Buck upon his (Dudley's) decease. Thereafter a deed of Dudley's farm was prepared in which Buck was named grantee. The deed was signed by Dudley and duly acknowledged by him, and was delivered to Wakefield. The master states that the "date of the execution of this deed was not disclosed by the evidence." Tendering the deed to Wakefield, Dudley said: "I leave this deed in your hands. I want you to deliver it to Kenneth Buck after my decease." Wakefield accepted the deed and put it in his safe. In May, 1931, Dudley inquired of Wakefield whether he might make a change in the deed. He said "that Buck was still a boy and liked a good time; that he believed it would be better to restrict the use of the farm so that it might not be alienated until Buck was at least thirty-one years of age." Wakefield expressed doubt as to whether any changes in the deed could be made without the consent of Buck. Dudley, on the advice of Wakefield, then consulted an attorney as to whether he could make a change in the deed in question without the consent of Buck, and was advised by the attorney that there was doubt about his right so to do; "that it would be safer to have Buck consent to the [proposed] change"; and that "Wakefield had no right to surrender the deed." Later, with the consent of Buck, a new deed was prepared, signed and acknowledged by Dudley. In all respects this second deed corresponded with the earlier deed except for a clause reciting that the "premises are conveyed subject to the express condition that the grantee herein shall not alienate nor mortgage

same nor permit same to be sold for taxes until January 9th, 1942." This deed is dated May 25, 1931, and, as well as the earlier one, reserved to the grantor "during . . . [his] natural life, all the rents, profits, and usufruct and absolute control of the above granted tract and all growing and cut wood and timber" thereon. The new deed was delivered to the defendant Wakefield in the presence of Buck, with instructions from Dudley that Wakefield was to hold the same in accordance with the same conditions attached to his holding of the original deed, which was thereupon destroyed.

Dudley died June 22, 1931. During his lifetime he kept the buildings on the premises described in the deed insured. He caused no transfer of the insurance policies to be made after May 25, 1931, and after that date made no attempt to change the deed or to revoke the same. The premises described in the deed are not specifically devised by the will of Dudley.

In the first report the master found that upon the delivery of the deed first executed Wakefield was acting as a depositary for Dudley; that "No different status was created upon the delivery of the second deed unless it shall be determined as a matter of law, the same having been effected in the presence and with the knowledge and consent of Buck, that Wakefield thereupon became a trustee for Buck"; that it is certain that "Dudley believed after his discussion with both his own attorney and Wakefield, that he could make no changes in the deed . . . or with respect to the conditions under which Wakefield was to hold the same, except with the consent of Buck." He stated that he expressed no opinion as to whether Dudley made an irrevocable deposit of the deed to Wakefield on May 25, 1931 (the date of the second deed), in view of the circumstances stated in his report; that "It is apparent that Dudley intended that the premises described in the deed should become the property of Buck to the exclusion of the beneficiaries named in his will or his heirs at law"; that "The circumstances under which the deed was executed and delivered to Wakefield under date of May 25, 1931, indicate two specific intents upon the part of Dudley," (1) "An intent that Buck should

have the deed of the premises only after Dudley's death and thereupon to the exclusion of the grantor's heirs or devisees"; and (2) "An intent upon Dudley's part that no one should interfere with his use of the premises so long as he lived"; that "The deed which he executed and delivered to Wakefield by its very terms clearly reserved to himself absolute control of the premises"; and he expressed no opinion whether in the circumstances the execution and delivery of the deed constituted an attempt on the part of Dudley to make a testamentary disposition of his property.

Neither party filed objections to the first report and on January 16, 1932, the plaintiff filed a motion to confirm the master's report and for the entry of a final decree. On February 10, 1932, it appearing that Kenneth H. Buck became of full age on January 9, 1932, on motion of the plaintiff assented to by the attorneys for Kenneth H. Buck, the judge ordered that the bill of complaint be amended by adding thereto the name of Kenneth H. Buck as party defendant.

On February 10, 1932, after the amendment had been allowed, the court by an interlocutory decree recommitted the report to the master for the following purposes: "1. To enable him to hear the defendant, Kenneth H. Buck, and his evidence to such extent as the said Buck may desire, and to hear such evidence to the contrary as may be proper; it being agreed, however, by the said Kenneth H. Buck that the evidence already received by the master shall be considered as applicable to the case against the defendant, Kenneth H. Buck. 2. To enable the master to report whether his finding that 'it would appear that Wakefield was acting as a depositary for Dudley' is an inference from other facts stated in the report, or a finding based in part upon facts not appearing in the report; and if the latter, to enable the master to report all the facts upon which the finding is based. 3. To enable the master to find the basic facts upon which the status of Wakefield as depositary of the second deed may be determined, and to enable the master to draw an inference as to his status from such basic facts. 4. To enable the master to make clear whether his

finding that there was on the part of Dudley 'an intent that Buck should have the deed of the premises only after Dudley's death' refers to a vested interest under the deed or the possession of the instrument. 5. To enable the master to make a finding of fact as to the existence of a testamentary intent on the part of Dudley, which finding should be an inference from basic facts full stated. 6. To enable the master to redraft his report in accordance with the terms of this decree of recommittal."

Pursuant to the interlocutory decree of recommittal, the master after due hearing filed in supplement of his original findings the report which follows: "1. Kenneth Buck, a minor when this case was first referred to me, has now become of age and has become a party defendant. 2. The findings in my original report to the effect that 'it would appear that Wakefield was acting as a depositary for Dudley' was based solely on facts therein stated, having in mind the case of *Hale* v. *Joslin*, 134 Mass. 310. 3. At the supplemental hearings there was presented no additional evidence bearing upon the status of Wakefield when the second deed was delivered to him by Dudley. A copy of this deed is attached to my original report and all facts in relation thereto are incorporated therein. However, after a reconsideration of the evidence and drawing reasonable inferences therefrom, and insofar as the question is one of fact, I find that Wakefield upon the delivery to him of the deed executed by Dudley dated May 25, 1931, all having been done with the knowledge, consent and in the presence of Buck, undertook to hold the same in a dual capacity in behalf of both Dudley and Buck. 4. I find that Dudley did not intend that Buck should have possession of the deed of the premises until his (Dudley's) death. Upon his death, however, he intended that Buck should secure the deed, as well as full title to the premises therein described. Taking into account all the circumstances under which Dudley deposited the deed with Wakefield, and having in mind the provisions of the deed itself by which Dudley reserved a life interest in the premises, it seems certain that Dudley intended to and did make an irrevocable deposit of the deed for the benefit of

Buck, to be delivered to the latter upon Dudley's death; that upon the execution of the deed Buck's title became presently vested in the premises described therein. If on the facts as stated in my original report, as well as those set out herein, Wakefield cannot be said to have been acting in behalf of Buck, on the evidence it is plain that Dudley believed he might neither alter, change nor revoke the deed without Buck's consent, and that he never did alter, change or amend the same. 5. Taking into consideration the entire circumstances I find that Dudley was not attempting to make a testamentary disposition of the premises described in the deed to Buck, executed by him under date of May 25, 1931, and delivered to Wakefield on that day to be held by the latter for delivery to Buck upon Dudley's death."

On May 9, 1932, the plaintiff filed the following objections to the master's supplemental report: "1. Plaintiff objects to the findings contained in paragraph 3, on the ground that the same is inconsistent with other findings contained in the original report, and inconsistent with the evidence recited by the master in the original report. 2. The plaintiff objects to the findings of the master contained in paragraph 4 of the supplemental report, on the ground that the same are inconsistent with other portions of the master's report and unwarranted on the evidence. 3. Plaintiff objects to the findings contained in paragraph 5 of the supplemental report, on the ground that the same are inconsistent with the evidence and other portions of the master's report."

A motion to recommit on the ground that the report in certain portions is inconsistent with and contradictory to other portions of the report was denied by the judge, by an interlocutory decree, which, on the defendant Buck's motion, confirmed the reports of the master and overruled the plaintiff's exceptions thereto.

The finding of the master that Wakefield was a depositary of the first deed from Dudley and was not an agent or trustee for Buck was warranted by the declarations of the grantor made at the time of and before the delivery of the deed to Wakefield. There was no intent to pass the title

when the deed was delivered to Wakefield. Dudley remained the owner with full legal power to revoke and cancel the deed at pleasure. *Hale* v. *Joslin*, 134 Mass. 310. *Smith* v. *Thayer*, 234 Mass. 214. If it was not within the right of Dudley to cancel the deed without the consent of Buck, that assent was granted, the deed was destroyed, and Buck, after he became of full age and a party to the bill, made no claim to title under the first deed. *Holbrook* v. *Tirrell*, 9 Pick. 104.

The second deed, saving the condition above referred to, was like the first deed in form and substance, and like the first was delivered to Wakefield "to hold the same in accordance with the same conditions attached to his holding of the original deed." There was a difference, however, in the circumstances attendant upon the delivery. Kenneth H. Buck, the grantee, then was present, and the deed, being for his benefit, vested the property in him subject to the life estate in the grantor and to any conditions in the deed unless the gift by deed was in violation of the statute of wills. *Cochrane* v. *Moore*, 25 Q. B. D. 57. Whether the execution and the delivery of the second deed by Dudley to Wakefield operated to vest in Buck a present absolute ownership of the real estate described in the deed subject to the life interest of Dudley and the conditions therein stated, or whether the deed is to be construed as a testamentary instrument and void because not executed as provided by statute, depends upon the answer to the question, Did Dudley in the circumstances disclosed intend that Buck should take a present vested interest or an interest which was contingent upon Dudley's change of mind or heart otherwise to dispose of the said real estate by deed or will? *Hale* v. *Joslin*, 134 Mass. 310, 312. *Jones* v. *Old Colony Trust Co.* 251 Mass. 309, 313. We think the facts found in the first report warranted, if they did not require, the conclusion of fact "that Dudley intended to and did make an irrevocable deposit of the deed for the benefit of Buck, to be delivered to the latter upon Dudley's death; [and] that upon the execution of the deed Buck's title became presently vested in the premises described

therein"; and that they warranted the further finding as an inference of fact, if it were not required as a ruling of law, that Wakefield held the deed of May 25, 1931, in a dual capacity in behalf of both Dudley and Buck. There is nothing of substantial merit in the objections of the plaintiff to the supplemental report.

The exceptions of the plaintiff were overruled rightly. It follows that the final decree is affirmed with costs to the defendant Wakefield.

*Ordered accordingly.*