LAURENCE P. DODGE *vs.* THE ANNA JAQUES HOSPITAL & another.

Essex.    May 2, 3, 1938. — November 4, 1938.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Equity Pleading and Practice*, Master: findings. *Trust*, Resulting. *Limitations, Statute of. Equity Jurisdiction*, Laches.

Where a master's report does not state nor show that his ultimate conclusion was based solely on the subsidiary facts recited, and the evidence is not reported, the conclusion must stand as binding on the trial court and this court on appeal, unless the subsidiary facts found show that the ultimate conclusion could not be justified upon any evidence that the master might have received.

Statement by DOLAN, J., of the duty of a master as to reporting subsidiary facts and the standing on appeal of a report which did not show that his conclusion was based solely on subsidiary facts stated in the report.

Money given to a hospital for the limited purpose, clearly understood by it, of being used in remodeling a certain building was held by it on a resulting trust for the donor upon abandonment of the remodeling project.

The statute of limitations did not begin to run against a donor's right to enforce a resulting trust, arising upon the donee's repudiation of the limited purpose for which the gift was made, until the repudiation was brought home to the donor; and a finding was right that the donor was not guilty of laches where he brought suit about a year after he discovered the repudiation and several months after the donee had refused a demand to return the gift.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Essex on July 27, 1937.

The decrees were entered by order of *Lummus,* J.

P. I. *Lawton,* for the defendant The Anna Jaques Hospital.

E. *Foss,* for the plaintiff.

DOLAN, J. This is a suit in equity in which the plaintiff seeks to establish a resulting trust in certain contributions made by him to the defendant hospital (hereinafter called the defendant) in May and December, 1928, for the purpose of removing and rebuilding a building formerly used by the defendant as an "Anti-Tuberculosis Building," and to compel the return of the money so contributed. The suit was filed in the Supreme Judicial Court for the county of Essex and was referred to a master who reported thereon. By order of a single justice of this court an interlocutory decree was entered overruling the defendant's exceptions and confirming the master's report, and a final decree was entered that the defendant held the sum of $2,100 upon a resulting trust in favor of the plaintiff and that the defendant collect that sum from its bank account in the First and Ocean National Bank and pay it over to the plaintiff, with interest from the date of filing the bill and costs. The interlocutory decree was entered on January 4, 1938, and the final decree on February 14, 1938. On February 26, 1938, the defendant appealed "from the interlocutory decree overruling the said defendant's exceptions and confirming the master's report, and . . . from the final decree . . . entered on February 14, 1938." In so far as the appeal purported to be from the interlocutory decree it was not seasonably taken, and the only appeal before us is that from the final decree. G. L. (Ter. Ed.) c. 214, §§ 19, 26. *Hays* v. *Georgian Inc.* 280 Mass. 10, 15. The correctness of the interlocutory decree, however, is open for considera-

tion upon the appeal from the final decree. G. L. (Ter. Ed.) c. 214, § 27. *Gibbons* v. *Gibbons*, 296 Mass. 89.

The material facts found by the master are as follows: The plaintiff is a resident of Newbury in the county of Essex, and the defendant is a charitable corporation which owns and operates a hospital in Newburyport in the same county. The defendant, prior to the year 1918, erected and thereafter maintained a hospital building for the treatment of tuberculosis. This building is situated about four hundred feet from the defendant's main building. After the erection of the county sanatorium in Middleton, the defendant ceased to care for tuberculous patients, and on July 21, 1927, at a meeting of the trustees of the defendant corporation, its medical staff recommended that the tuberculosis building be remodeled for use as a "maternity ward." This recommendation was referred to a special committee which, on January 19, 1928, advised that the building be removed to a site nearer the main building and remodeled at an expense of approximately $15,000. The plaintiff was a member of this committee. At a meeting of the trustees, of whom the plaintiff was one, held on February 22, 1928, and at which he was present, it was voted to adopt the committee's recommendations and to put them into effect as soon as the necessary funds could be made available, and that the same committee have charge of raising the money and of conducting the work, with authority to sign contracts and begin work when in its opinion "a sufficient proportion of the necessary amount was assured." At the outset of the campaign to raise funds the plaintiff subscribed $2,100 of which he paid $100 in May, 1928.

On October 5, 1928, the vote authorizing the moving of the tuberculosis building was rescinded by the trustees on the plaintiff's motion because it had been ascertained that the proposed change would cost more than the first estimate. The plaintiff thereupon suggested that the building remain in its location but that it be connected with the main building by a tunnel or arcade. It was then voted that one Moseley, the largest contributor to the fund, be consulted before any change in the original plan was made.

On or about December 1, 1928, the plaintiff completed his subscription by the payment of $2,000. Some time later the "building" committee obtained an estimate in excess of $20,000 as the cost of connecting the tuberculosis building with the main building, but no report was made thereon to the trustees. At the annual meeting of the "hospital" on January 24, 1929, at which the plaintiff was present and was elected president, it was reported that Moseley was willing to have his contribution of $5,000 used for "equipment and improvement." A total of $20,000 was raised in the campaign for funds and "No part of it has been used for any utilization of the . . . [tuberculosis building] or for any work upon, or connected with, it." The plaintiff did not attend any meetings of the trustees after April, 1929, and on October 24, 1929, tendered his resignation as president, but no action was taken thereon, and in January, 1930, he was re-elected president. The plaintiff moved from Boston to New York about June 10, 1930, where he lived until May, 1936, when he moved to Newbury. He spent his summers during the intervening period in Newbury.

The fund involved was at first deposited in a checking account in a national bank and later about $18,000 thereof was transferred to its savings department. From 1932 on the fund was used for general improvements and equipment unconnected with the tuberculosis building, and was carried on the books of the hospital as "improvement fund," an entry of December 31, 1936, reading "'due imp. fund' $9017.58." The fund is now somewhat below the last mentioned figure. In November, 1936, the plaintiff wrote to the then president of the hospital demanding the return of his contribution. After an interchange of letters he was notified on February 3, 1937, that the matter had been laid "on the table." His demand was not complied with.

The ultimate findings of fact of the master are that the plaintiff intended that his gift should be used solely for the "utilization" of the tuberculosis building, that he made that restriction reasonably clear to the trustees and

believed, and was warranted in believing, that the terms of his gift were so understood by them, that he "has never conveyed to them any information on the question except as herein reported" and that he first learned in the summer of 1936 of any project for using the fund for a purpose not involving the tuberculosis building. We interpret the last finding to mean that the plaintiff never heard of the adoption of any project for using the fund for purposes not connected with the tuberculosis building until the summer of 1936.

The evidence is not included in the master's report and it does not state nor show that his ultimate findings of fact are based solely on the subsidiary facts set forth in the report. The ultimate findings may have been rested on evidence heard by the master, which was not before the single justice and is not before us. Consequently the single justice and this court are bound by the ultimate findings unless the subsidiary facts stated are sufficient in themselves to demonstrate that the ultimate findings could not be justified upon any evidence that the master might have received. Since we are of opinion that the subsidiary facts found are not inconsistent with the ultimate findings of the master, they were binding on the single justice and are binding on us. This is not in conflict with the rule that, where the master's report states or shows on its face that his ultimate findings are based solely upon the subsidiary facts recited in the report, the question of fact whether the ultimate findings are correct is open. *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24, 25. *MacLeod* v. *Davis,* 290 Mass. 335, 337 *et seq. Robinson* v. *Pero,* 272 Mass. 482, 484.

Although the trial court and this court on appeal may draw further inferences from the facts reported by a master, neither may draw inferences of fact in contradiction of those found by him unless it is clear that it has before it as a foundation all that he had before him, as in *Robinson* v. *Pero,* 272 Mass. 482, or that the subsidiary facts found are so inconsistent with the ultimate findings that both cannot stand, as in *Kasper* v. *H. P. Hood &*

*Sons, Inc.* 291 Mass. 24. In the latter case the subsidiary findings of fact prevail. *MacLeod* v. *Davis,* 290 Mass. 335, 337. A master owes a duty to the parties, when making ultimate findings upon vital points, to find and report the subsidiary facts upon which they are based and to state that they are so based. If he fails to do so the only remedy of an aggrieved party is to move for recommittal, that all the subsidiary facts upon which the ultimate findings were based may be set forth in the report. *Lawrence* v. *Houghton,* 296 Mass. 407, 408. *MacLeod* v. *Davis,* 290 Mass. 335, 338. *Wilson* v. *Jones,* 280 Mass. 488. *Kennedy* v. *Welch,* 196 Mass. 592, 594. *Pray* v. *Brigham,* 174 Mass. 129.

It follows from what has been said that in the present case the ultimate findings of the master must stand and that the contentions of the defendant that the findings of the master do not require a decree in the plaintiff's favor and that he is barred from relief by the statute of limitations or laches cannot be sustained.

The limited purpose for which the plaintiff made his donation having been abandoned, it is held by the defendant upon a resulting trust in his favor. *Easterbrooks* v. *Tillinghast,* 5 Gray, 17, 21. *Teele* v. *Bishop of Derry,* 168 Mass. 341, 343. *Gill* v. *Attorney General,* 197 Mass. 232, 237. *Bowden* v. *Brown,* 200 Mass. 269, 271. Am. Law Inst. Restatement: Trusts, § 413. The doctrine of *cy pres* has no application. *Jackson* v. *Phillips,* 14 Allen, 539. *Stratton* v. *Physio-Medical College,* 149 Mass. 505, 509. *Bullard* v. *Shirley,* 153 Mass. 559, 560. Am. Law Inst. Restatement: Trusts, § 399.

The statute of limitations did not begin to run in favor of the defendant until the limited purpose for which the plaintiff made his gift was actually abandoned by the defendant and knowledge of such abandonment or repudiation was brought home to the plaintiff. *Davis* v. *Coburn,* 128 Mass. 377, 380. *Currier* v. *Studley,* 159 Mass. 17, 20. *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252, 259. *Stuck* v. *Schumm,* 290 Mass. 159.

The question of laches is one of fact (*Shea* v. *Shea,* 296 Mass. 143, 147), and is as fully open before us upon the

facts found by the master as it was before the single justice. We see no reason to disagree with the conclusion of the single justice, implied in his decree for the plaintiff, that the latter is not barred by laches. *North Easton Co-operative Bank* v. *MacLean*, 300 Mass. 285, 294, and cases cited.

*Decree affirmed with costs.*