MARGARET MACDONALD *vs.* LUKE L. GOFF & others.

Essex.    May 6, 1952. — July 7, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Executor and Administrator,* Compromise agreement, Claim against estate.    *Contract,* Compromise respecting decedent's estate.    *Equity Pleading and Practice,* Counterclaim; Master: findings.

A contract made between the heirs of an intestate decedent and a woman claimant against his estate for the purpose of settling her claims and avoiding likely litigation, and containing a waiver by her of "all her rights and claims of every kind and nature which she has or has had against . . . [the decedent] or against his estate," barred a claim by her to a bank account standing in the decedent's name, "Special," although the money in the account was her money "deposited . . . for her by" him.

A final decree in a suit in equity adjudicating that the plaintiff was not entitled to a bank account, but not adjudicating counterclaims of

two defendants each claiming the account, did not terminate the controversy: disposition of the counterclaims remained. [224]

. A conclusion by a master based on "all the evidence," which was not reported, was binding on the trial court and this court where it was not inconsistent with the subsidiary findings reported by the master. [225]

BILL IN EQUITY, filed in the Superior Court on June 21, 1950.

The suit was heard by *Smith*, J., upon a master's report.

*J. Haller Ramsey*, for the defendant Luke L. Goff.

*Samuel H. Malinow* & *John M. Fogarty*, for the defendant Malinow, administrator, submitted a brief.

*Richard L. Sisk*, for the plaintiff.

SPALDING, J. These appeals bring to this court for the third time questions arising out of the estate of Martin G. Gough. The prior litigation is reported in 326 Mass. 93 and 327 Mass. 739. The present suit was brought by Margaret MacDonald to establish her right to certain real and personal property. The defendants are the heirs at law of Martin G. Gough and Mr. Malinow, the administrator of Gough's estate.

While this suit was pending a decree was entered in an earlier suit which ordered the distribution of some of the assets described in the present bill to Luke Goff as trustee under an indenture hereinafter discussed. `Accordingly the plaintiff made no further claim to those assets and sought only to establish her right to a certain bank account (hereinafter referred to as the "special" account) in the Boston Federal Savings and Loan Association.

The findings of the master, to whom the case was referred under the usual rule, included the following: Martin G. Gough (hereinafter called Gough) lived with the plaintiff Margaret MacDonald, also known as Margaret Gough, as husband and wife from 1934 until his death, intestate, on July 27, 1948. During that period the plaintiff entrusted considerable sums of money to Gough to save and invest for her. The plaintiff regarded him as "her agent or trustee" and relied on him completely. Gough traded extensively in the stock market, but his records of investments made on

the plaintiff's behalf were incomplete.  On January 31, 1940, Gough opened two savings accounts with the defendant Boston Federal Savings and Loan Association.  One was in the name of "Martin G. Gough, Special," and the other was in the name of "Martin G. Gough."  About two weeks later, after his brother Luke L. Goff had signed a signature card at the bank, Gough transferred the latter account into the names of "Martin G. Gough or Luke L. Goff."  This account will be referred to hereinafter as the joint account. In 1946 Gough stated that the "special" account belonged to the plaintiff and made representations which led her to believe that the joint account was also hers.  Subsequently he told her that if "Luke behaved all right he would give it [the joint account] to him and if he didn't he would keep it for himself."  The plaintiff found the joint account book in Gough's office about four months after his death.  The "special" account book has been in her possession since 1946.  Gough's heirs at law, Luke L. Goff, James H. Gough and Frank J. Gough, did not learn of these accounts until sometime in 1950.

To avoid litigation the heirs at law executed a written agreement on August 16, 1948, authorizing Luke to negotiate with the plaintiff and settle any claims that she might have against Gough's estate.  On August 18, 1948, Luke negotiated a settlement with the plaintiff whereby the heirs at law agreed to transfer the net assets of the estate to Luke in trust to pay $195 monthly to the plaintiff for life, with gifts over which need not concern us.  The plaintiff agreed "to waive all her rights and claims of every kind and nature which she has or has had against the said Martin G. Gough or against his estate, and to assign and convey whatever stock is now in any vault or safe deposit box standing in her name, excepting therefrom, 282 shares Remington Rand common, to said Luke L. Goff as trustee, for the purpose aforementioned and specifically waives any rights she has in any will or codicil thereto executed by said Martin G. Gough, and any statutory rights she may have in and to . . . [his] estate . . . and to sign any instruments or papers necessary

to accomplish the administration of . . . [his] estate . . . and the creation of said trust." A trust indenture carrying out the terms of the foregoing agreement was subsequently entered into by the parties.

"Upon all the evidence" the master found that the joint account became Luke's property upon Gough's death. He also found that the fund in the "special" account "is the money of . . . [the plaintiff] deposited . . . for her by Martin G. Gough," leaving for the court's determination the question of the effect of the agreement of August 18, 1948. The master's report was confirmed by an interlocutory decree. The final decree, so far as material, ordered payment of the "special" account to the plaintiff and adjudicated that the plaintiff was not entitled to the joint account. The decree, however, did not dispose of the counterclaims.[1] Luke and the administrator appealed.

We are of opinion that the final decree was erroneous in failing to order the payment of the "special" account to the administrator. Eventually, of course, this will pass to Luke as trustee under the indenture described above, but he receives as trustee "the net assets of said estate as soon as said administration has been completed" and we infer that this has not occurred. The agreement of August 18, 1948, unequivocally provided that the plaintiff waives "*all* her rights and claims of *every kind and nature* which she has or has had against the said Martin G. Gough . . ." (emphasis supplied). The purpose of this agreement is obvious. Gough and the plaintiff, although unmarried, had been living together for many years. Their financial arrangements were closely interwoven and adequate records of them were not available. The situation was one where litigation was likely to ensue. To avoid this the heirs at law agreed to give to the plaintiff a stipulated amount monthly for life in return for her relinquishment of all of her rights and claims against the estate. It was not to be a piecemeal settlement. It

---

[1] The answer of the administrator contained a counterclaim alleging that he was entitled to both bank accounts. Luke's answer also contained a counterclaim in which he asserted title to the joint account.

may be true, as the master found, that the special account was made up of funds furnished by the plaintiff.   But the plaintiff's relinquishment of claims was comprehensive; it embraced matters as to which there might be grounds for a claim as well as those as to which there was no merit.   The only property specifically exempted from the operation of the agreement was the 282 shares of Remington Rand stock. [1] The suggestion made by the plaintiff that her right to the "special" account was not a claim against the estate but rather one against the bank does not impress us.   Of course, the bank book was evidence of a claim against the bank. But as between the plaintiff on the one hand and the administrator on the other it represented a right or claim against the estate.   The bank account stands in Gough's name, and if the plaintiff does not prevail it will go to his estate and eventually into the trust.   On the other hand, if the plaintiff prevails the fund will go to her and the estate will be diminished.   This conclusion makes it unnecessary to discuss the defence of res judicata or the issue raised by Luke's plea.

It remains to consider the matter of the joint account. Although the final decree adjudicated that the plaintiff had no rights in the joint account, it did not dispose of the counterclaims of Luke and the administrator under which each claimed the account.   The decree, therefore, did not terminate the controversy.   *Blume* v. *Oil-O-Chron, Inc.* 287 Mass. 52, 55.   When the case goes back to the trial court the counterclaims ought to be disposed of.   In order to bring this protracted litigation to an end we think, as the appellants urge, that we ought to indicate what decree should be entered with respect to the joint account.   That issue has been fully tried and it was dealt with in the report of the master which has been confirmed.   We are of opinion that the decree should adjudge the ownership of this account to be in Luke in accordance with the ultimate finding of the master. If that finding had been based solely on his subsidiary find-

---

[1] It was agreed at the arguments before us that the number of these shares was 281.

ings (all of which have been recited above) we would hold otherwise. But that is not the case. The master made his ultimate finding "upon all the evidence" and the evidence is not reported. In these circumstances the trial judge and this court "are bound by the ultimate findings unless the subsidiary facts stated are sufficient in themselves to demonstrate that the ultimate findings could not be justified upon any evidence that the master might have received." *Dodge v. Anna Jaques Hospital*, 301 Mass. 431, 435. We cannot say here that the specific findings were such as to make the master's ultimate finding unjustified on evidence that he might have received and of which we have no knowledge.

The interlocutory decrees denying the motion to recommit the master's report and confirming the report are affirmed. The final decree is to be modified by striking out paragraph numbered 2 thereof and inserting in place thereof a new paragraph adjudging that the administrator is entitled to the proceeds of the "special" account represented by book #4667; and a new paragraph is to be inserted decreeing that Luke L. Goff is the owner of the joint account represented by book #4666. As so modified the decree is affirmed. The appellants are to have costs of appeal.

*So ordered.*