M. ROGERS WENDELL *vs.* JOHN T. CLARK.

Suffolk. November 18, 1921. — March 3, 1922.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Limitations, Statute of. Equity Jurisdiction,* Accounting. *Partnership.*

A master, to whom was referred a suit in equity seeking an accounting from the defendant, alleged to be a partner of the plaintiff in certain transactions in securities, made findings substantially as follows: The agreement was that the plaintiff should deposit certain bonds and shares of stock with a certain firm of stockbrokers, employers of the defendant, through whom transactions of trading in securities were to be carried on, the defendant to supervise the account and the agreement to be limited to the time of the defendant's employment by that firm; all profits and losses were to be shared equally. Transactions were begun in the year 1908. In April, 1910, the defendant's employment by the firm was terminated. The plaintiff did not know of this till November, 1910, when, without notifying the defendant and without his consent, he caused another firm of stockbrokers "to take over the account," pay the amount due and receive the securities. The plaintiff made no complaint to the defendant as to his conduct until February 1, 1915, when he wrote him that it was time that he should hear from him "in some definite and substantial way both on the matter of back interest and on the matter of an amount of money" drawn

by the defendant from the account before the termination of his employment by the stockbrokers. The defendant at first replied that he had drawn $250 from the account which he would repay "as soon as his present affairs would permit," later sent the plaintiff a check for that amount, and then, on December 21, 1917, wrote enclosing a detailed statement of the account, which showed a net profit on the transactions, and requested a return of the amount of the check, which, he said, had been paid under a mistaken impression as to the true state of the account. The suit was brought on May 12, 1919, and the defendant pleaded the statute of limitations. The master found, without a report of evidence, that it was "impossible, from any evidence before" him, "to make any finding as to whether the transactions . . . resulted in a profit or a loss." *Held,* that

(1) It was not necessary to determine whether the relation of the parties was that of partners, as, the transaction being a joint adventure, each party, if dissatisfied, was entitled to demand an accounting;

(2) The statute of limitations began to run at the time the plaintiff caused the account to be taken over by another firm of stockbrokers, at which time the plaintiff either knew or had at his command full sources of information relating to all the transactions relating to the account;

(3) There then being no outstanding obligations against the account, the defendant not being a liquidating partner or adventurer and no actual fraud having been shown, the operation of the statute was not postponed;

(4) An inference was warranted, either that the payment of the $250 was made by the defendant in accordance with his promise to repay the amount withdrawn from the account for his personal use, in which case its significance should be limited to that obligation so cancelled, or that on all the correspondence the payment was made by mistake; and in either case a ruling was proper that the statute of limitations remained a bar to the suit;

(5) No finding appearing which would warrant a conclusion that any act of the defendant had caused an impairment or loss of the securities originally deposited or contributed by the plaintiff, the plaintiff was not entitled to relief on the merits;

(6) Conversations between the plaintiff and a member of the second firm of stockbrokers in the defendant's absence were hearsay and not admissible as evidence;

(7) Evidence tending to show that the delay of the plaintiff in bringing suit was due to indigent circumstances of the defendant properly was excluded;

(8) A decree dismissing the bill was proper.

BILL IN EQUITY, begun in the Superior Court by writ of attachment dated May 12, 1919, to which was attached a bill of complaint, afterwards amended, seeking an accounting from the defendant as to certain alleged partnership transactions in securities.

In the Superior Court the suit was referred to a master on November 30, 1920, by a rule directing him "to hear the parties and their evidence and report his findings to the court together with such facts and questions of law as either party may request."

Upon a motion by the plaintiff, representing, among other things, "that the plaintiff and defendant have both submitted their evidence upon the issue as to whether the defendant must be held to render an account of transactions for the joint account made under his supervision during the period of his connection with Henshaw and Company," an order was entered on February 1, 1921, modifying the rule and directing that the master "forthwith, upon the evidence now before him, report to the court his finding of facts with reference to the right of the plaintiff to any recovery or accounting; and take no further action under the rule directed to him until further order from the court."

Material findings of the master are described in the opinion. The suit afterwards was heard by *Wait,* J., by whose order there were entered an interlocutory decree overruling exceptions of both parties to the report of the master, and a final decree dismissing the bill.

*R. S. Warner,* for the plaintiff.

*H. L. Barrett,* (*F. Foster* with him,) for the defendant.

BRALEY, J. The bill alleges, the answer admits and the master finds, that the parties at some time previous to October, 1908, entered into an agreement to trade in stocks through Francis Henshaw and Company, a firm of stockbrokers. The account was opened by, and always stood in the name of the plaintiff who deposited therefor certain bonds and shares of stock. The defendant, an employee of the firm, was to supervise the account, and all profits and losses were to be shared equally. The master, while finding these facts, did not pass upon the question of partnership but left it for the decision of the court. It was a question of fact within his province to decide. But, whether treated as a partnership or as a joint adventure for their mutual benefit, either party if dissatisfied could demand an accounting. *Forino Co. Inc.* v. *Karnheim, post,* 574, and cases cited. The defendant terminated his employment sometime in April, but the plaintiff did not know it until immediately prior to November 4, 1910, when, without consulting the defendant and without his assent, he caused another firm of stockbrokers "to take over the account," pay the amount due, and receive the securities. The plaintiff contended before the master and contends here, that as a result of the defendant's management he has suffered large losses, for one half of which he should be reimbursed.

The securities having been taken over and the agreement having been expressly limited to the term of the defendant's employment, the joint undertaking ended "on or about November 14, 1910," when the plaintiff either is shown to have known, or to have had at his command full sources of information relating to their speculations shown by the books of Henshaw and Company. It is at this time that his right to an accounting for alleged mismanagement accrued. *Kennedy* v. *Porter,* 109 N. Y. 526. The present suit was begun by writ dated May 12, 1919, and the statute of limitations has been pleaded. The rule sometimes applied, that the statute does not begin to run as between partners after dissolution until the partnership debts have been liquidated, has no bearing in the case at bar, as there were no outstanding obligations. *Riddle* v. *Whitehill,* 135 U. S. 621. The defendant also was not a liquidating partner, or adventurer, and, no actual fraud having been shown and the relations of the parties at that time having become adverse, the bill cannot be maintained unless the defendant's letters interrupted the statute. *Farnum* v. *Brooks,* 9 Pick. 212, 245. *Sawyer* v. *Cook,* 188 Mass. 163. *Sunter* v. *Sunter,* 190 Mass. 449, 456.

The plaintiff, as previously said, did not consult the defendant before transferring the securities and made no complaint concerning the defendant's conduct until February 1, 1915, when he wrote the defendant, who was his brother-in-law, "it is time that I should hear from you in some definite and substantial way, both on the matter of back interest and on the matter of an amount of money which you drew from the account before you left Henshaw." The defendant at first replied that he had drawn $250 from the account for his personal use and would repay it "as soon as his present affairs would permit," and later sent a check to the plaintiff for this amount. But subsequently on December 21, 1917, he wrote the plaintiff enclosing a statement in detail of the account showing a net profit instead of a loss as the plaintiff claimed, and stated that under a mistaken impression as to the true condition of the account, he had sent the check, the amount of which he asked the plaintiff to repay. The letters are to be read together to determine whether the defendant made the payment as a partial acknowledgment of an admitted existing liability. See R. L. c. 202, § 1, cl. 1, § 13; *Day* v. *Mayo,* 154 Mass. 472. "The nature of the

act is to be determined by the intention of the debtor as shown by the act, his words, and the circumstances accompanying and explaining it." It is a question of fact which the master left undecided. *Gillingham* v. *Brown*, 178 Mass. 417, 424. The trial judge however could draw inferences of fact from the facts reported, and properly could find under all the circumstances shown by the report, that the payment was in accordance with the defendant's promise to repay the amount withdrawn for his personal use, to which it should be limited, or that on all the correspondence the payment was made by mistake. *Danforth* v. *Chandler*, 237 Mass. 518. And no payment having been made which took the plaintiff's claim out of the operation of the statute, his ruling that it was barred, should not be reversed.

The plaintiff also failed to make out a case on the merits. The master states, "It is impossible, from any evidence before me, to make any finding as to whether the transactions under the account in question resulted in a profit or a loss." The plaintiff requested him to find that "he has proved the liquidation of the securities contained in the joint account." The request was refused because there was no competent evidence that such liquidation had been effected. It would not have helped the plaintiff if the master had so found. The evidence is not reported, and no finding appears that any act of the defendant caused an impairment or loss of the securities originally deposited, or contributed by the plaintiff. *Braman* v. *Foss*, 204 Mass. 404, 411. *Wilde* v. *Sawtelle*, 232 Mass. 117, 123. His exceptions to the master's report were overruled rightly. The conversations in the defendant's absence between the plaintiff and a member of the banking firm to whom the securities were transferred were mere hearsay. The offer of proof, that he delayed bringing suit because of the defendant's indigent circumstances prior thereto, could not stop the operation of the statute of limitations for reasons sufficiently stated.

The result is, that, the defendant's appeal from the interlocutory decree overruling his demurrer, not having been argued, must be treated as waived, and the interlocutory decree overruling the plaintiff's exceptions and confirming the report, and the final decree dismissing the bill, are affirmed with costs of the appeal.

*Ordered accordingly.*