INMAN TRUST COMPANY *vs.* FEDERAL NATIONAL BANK OF BOSTON.

Suffolk. May 17, 1937. — September 16, 1937.

Present: RUGG, C.J., CROSBY, DONAHUE, LUMMUS, & QUA, JJ.

*Bills and Notes,* Accommodation, Validity.

A loan by a national bank on notes of officers of a trust company, use by the borrowers of the money so received to purchase a certificate of deposit from the bank and indorsement of the certificate to the trust company to create a guaranty fund against an existing impairment of the capital of the trust company, constituted a real transaction within the corporate powers of the bank, rendering it liable to the trust company upon the certificate of deposit.

CONTRACT. Writ in the Superior Court dated September 29, 1933.

The action was heard without a jury by *Goldberg,* J., who

found for the plaintiff in the sum of $70,000. The defendant alleged exceptions.

*B. K. Fisk*, for the defendant.

*C. W. Mulcahy*, (*J. F. Desmond* with him,) for the plaintiff.

QUA, J. This is an action on a certificate of deposit for $70,000, issued by the defendant on August 7, 1931, payable to one Fenderson and indorsed by him to the plaintiff. The defence is that the issuance of the certificate, although legal in form, was not in reality a transaction in the course of business of the defendant, but was in truth merely an ostensible or colorable lending of the defendant's credit for the accommodation of the plaintiff and was therefore either a nullity or beyond the powers of the defendant as a national bank. *National Shawmut Bank of Boston* v. *Citizens National Bank of Boston*, 287 Mass. 329. *Texas & Pacific Railway* v. *Pottorff*, 291 U. S. 245.

These facts were agreed or could have been found: Prior to August 7, 1931, the capital of the plaintiff had become impaired to the extent of $70,000, and the commissioner of banks, who is now in possession of the plaintiff, had demanded that it be restored. On August 7 Fenderson, who was the plaintiff's treasurer, together with the president and certain directors of the plaintiff, gave to the defendant two joint promissory notes signed by them personally and payable to the defendant, each note being for $35,000 on demand, with four per cent interest. In return for these notes the defendant on the same day gave to the makers of each note its cashier's check for $35,000. The payees of both checks indorsed them in blank and returned them to the defendant, and the defendant thereupon gave Fenderson the certificate of deposit for $70,000, which was the sum of the amounts of the two notes. Also under date of August 7, Fenderson entered into an agreement in writing with the plaintiff reciting that he deposited with the plaintiff the certificate of deposit as a guaranty fund against the existing impairment of the plaintiff's capital, and the plaintiff agreed to redeliver the certificate or any securities

or cash that might be substituted therefor to Fenderson or his nominee whenever the impaired capital should be restored. Also on the same day, another agreement in writing was entered into between Fenderson and the other signers of the notes and one Mulloney, who was president of the defendant, wherein Fenderson agreed that he would use all income from the certificate of deposit or from any securities or cash substituted therefor to pay the interest on the two notes, and that when, as and if the certificate of deposit or securities should be returned to him he would apply the proceeds thereof to the payment of the two notes and would distribute any surplus among the parties, and it was further agreed that Mulloney should share with the others in making up any deficiency or in the division of any surplus. On December 15, 1931, the defendant was closed, and both banks are now in process of liquidation.

The natural conclusion from the giving to the defendant of the two notes and the receipt from the defendant of the cashier's checks and then of the certificate of deposit for an amount equal to the aggregate amount of the notes would be that the defendant had lent $70,000 to the makers of the notes on the strength of those notes — a transaction which would be plainly within the corporate powers of the defendant as a national bank, U. S. C. Title 12, § 24 — and that the borrowed money had been at once invested in the certificate of deposit. There is nothing in the two agreements or in the remaining evidence which required a contrary finding or which required a finding that the note transaction was not what it purported to be. No doubt all parties expected and intended that the proceeds of the loan should be used as a guaranty fund for the plaintiff, but this does not make the defendant an accommodation party. The makers of the notes could be found to be genuinely liable to the defendant upon them. The notes or their proceeds, the cashier's checks which were returned to the defendant, were the consideration for the certificate of deposit.

The defendant argues that the notes and certificate were

nothing but shams intended to create an appearance of credit for the benefit of the plaintiff, because the evidence showed that the four per cent interest on the notes exactly offset interest at the same rate which the defendant paid for a short time on the certificate of deposit and which in fact Fenderson applied, as intended, to pay the interest on the notes. And it is urged that the transaction could result in no profit to the defendant But this does not prove, as matter of law, that the notes, the cashier's checks, or the certificate of deposit and its indorsement to the plaintiff were not real. It is not shown that the defendant was legally bound to pay any interest on the certificate of deposit and the trial judge has not charged it with interest in his finding, although the makers of the notes were bound to pay interest on the notes, so that the transaction might have resulted in a profit to the defendant. The defendant was not a party to either of the collateral agreements and therefore had no interest in or control over the disposition of the certificate of deposit and remained liable to pay to any holder of the certificate the sum named therein. See *Shute* v. *Pacific National Bank*, 136 Mass. 487; *Hunt, appellant*, 141 Mass. 515.

This case is distinguishable from *Rankin* v. *City National Bank of Kansas City*, 208 U. S. 541, 545. There it was said that "the whole business . . . was and was intended to be a mere juggle with books and paper to deceive the bank examiner." Here the transaction has been found to be real. Compare *Federal Reserve Bank of Richmond* v. *Crothers*, 289 Fed. 777.

*Exceptions overruled.*