### DEITRICK v. FENDERSON et al.
(two cases).

Nos. 7143, 7144.

District Court, D. Massachusetts.

May 1, 1939.

Aldridge & Fisk, A. J. Aldridge, and Brenton K. Fisk, all of Boston, Mass., for plaintiff.

John M. Russell, of Boston, Mass., for defendant Albert E. Lynch.

George A. McLaughlin, of Boston, Mass., for defendant Robert J. Fawcett.

Marvin C. Taylor, of Boston, Mass., for defendant Lloyd B. Fenderson.

Charles A. McCarron, of Boston, Mass., for defendant Arthur G. MacKenzie.

### McLELLAN, District Judge.

These suits were brought October 26, 1937, on two promissory notes, dated August 7, 1931, each for $35,000 payable on demand to the order of Federal National Bank of Boston, hereinafter called Federal. In both actions the defendants set up the statute of limitations as a bar to these suits. As to this defense, the plaintiff contends that the cases are taken out of the statute of limitations by certain payments described below. The defendants also set up several other defenses which I find it unnecessary to consider.

The note pleaded in Law No. 7143 was signed by the defendants Fenderson, Lynch, Fawcett and by one James S. Cassidy, since deceased. The note pleaded in Law No. 7144 was signed by the defendants Fenderson, Lynch, Fawcett and MacKenzie. The notes are otherwise identical. The plaintiff and the defendant Fenderson have each moved, with supporting affidavits, for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. All parties have consented to a final determination of the controversy upon the pleadings, affidavits, and accompanying exhibits, from which I find as follows:

### Findings of Fact.

In August, 1931, the Inman Trust Company, of Cambridge, Massachusetts, hereinafter called Inman, was a banking corporation, organized under the laws of the Commonwealth of Massachusetts, and was one of a group of banks owned or controlled or under the domination of Federal. Inman was so associated with Federal by legal control or in the minds of the public that any impairment of the financial soundness of Inman would react directly upon Federal. On August 7, 1931, the Commissioner of Banks of Massachusetts had advised Inman of an impairment of capital to the extent of $70,000. In order to make good this impairment, the following steps were taken. The two notes in suit were first signed as described above. They bore interest at the rate of four per cent. On the same day, Federal issued its two cashier's checks

each for the face amount of the notes, payable to the makers of the notes respectively. These checks were immediately endorsed by their respective payees and delivered to Federal in return for its certificate of deposit of $70,000. This certificate of deposit was payable to the order of the defendant Fenderson. No rate of interest was specified on the certificate of deposit, or on the books of Federal. Columns in such books provided for data concerning interest and rate of interest on similar certificates were left blank. Fenderson at once endorsed the certificate to the order of Inman. On the same day, two agreements were entered into. The first, purporting to be between Fenderson, as party of the first part, and Fawcett, Lynch, Cassidy, Fenderson, MacKenzie and one Daniel C. Mulloney, who was president of Federal, as parties of the second part, set forth the steps outlined above and then provided that when, as and if the certificate of deposit, deposited by the party of the first part with Inman, or any cash or securities substituted therefor, should be returned to the party of the first part, the party of the first part should convert the certificate of deposit into cash, or sell the securities at the then market price, and apply the proceeds to the payment of the two notes. It was further provided that any surplus should be divided in a manner set forth in the agreement, and that in case the proceeds of the certificate of deposit or securities substituted therefor should be insufficient to pay the amount of the notes, Daniel C. Mulloney would pay a two-tenths proportionate part of the amount necessary to pay the notes in full, in consideration of his becoming entitled to receive a similar portion of any surplus. The agreement further provided: "The party of the first part covenants and agrees that all of the income that may be received from the certificate of deposit or cash or securities that may be substituted therefor, shall be used by him to pay the interest that may be due from time to time on the two notes at (sic) thirty-five thousand (35,000) dollars, each, hereinbefore referred to. All payments of interest or principal that may be made on the two notes of thirty-five thousand (35,000) dollars each are to be made in equal proportions, that is, the same amount shall be paid at the same time on each note."

The second agreement, also made August 7, 1931, was between Inman and Fenderson. By this agreement, Fenderson deposited the certificate of deposit, referred to above, as a guarantee fund against the existing impairment of capital of Inman. The bank agreed to re-deliver the certificate of deposit or any cash or securities substituted therefor to Fenderson whenever, in the opinion of the Commissioner of Banks of Massachusetts, the impairment of capital should have been restored. It was also agreed: "The legal title to the securities deposited shall be and remain in the said Lloyd B. Fenderson, subject to the right of the bank to cash, sell, transfer or otherwise dispose of the said securities for the purpose of restoring with cash the capital impairment caused by the existing depreciation in the bond and securities account. It is understood and agreed in the event of liquidation that the proceeds of said certificate of deposit or securities substituted therefor may be used in satisfying all creditors of the Inman Trust Company, provided all of the other assets of the bank are insufficient to satisfy the creditors. It is understood and agreed that under no circumstances in the event of liquidation or otherwise, shall the proceeds of the certificate of deposit or the cash or securities substituted therefor, be available for the benefit of the stockholders of the bank."

The transactions were all carried out under the supervision of the officers of Federal, and the various agreements were prepared by its counsel, without charge to any of the signatory parties. The defendant Fenderson states in his affidavit that it was understood that none of the makers of the notes would be expected or required to make any payments thereon, the transaction of discounting the notes being merely for the purpose of lending an appearance of validity to a transaction beyond the powers of Federal. The validity of this contention need not be determined for reasons hereafter appearing.

On November 6, 1931, Fenderson was advised by Federal that it desired the record at that bank to show a payment of interest on the two $35,000 notes, and that it would furnish him with the necessary funds for this purpose. On that day, Federal issued a check for $668.90, payable to the order of Fenderson, which was deposited by him the next day to his own account in Inman. On the books of Federal, this check appears as the total of two items as follows:

"Res. on C. of D. #3127 L. B. Fenderson    652.06
   issued on account of "Reserve for
   Int. on C. of D."
"Int. on C. of D. #3127 L. B. Fenderson    16.84
   issued on account of "Interest
   on deposit."

On November 9, 1931, Federal received from Fenderson his personal check on Inman for $668.90, drawn November 7, 1931. One half the amount of this check was endorsed on each of the notes with the date "11/9/31" in the "Interest Paid" column. Fenderson understood that the funds represented by the cashier's check of Federal did not belong to him, but were to be redelivered in some form to that bank. The defendant Fenderson made no payment on either of the notes by the use of any funds of his own or of any of the other makers, except as described above. No payments of any kind were made by any of the other makers. This is the payment which it is alleged took these cases out of the statute of limitations.

James S. Cassidy, a maker of the note in suit in Law No. 7143, died April 13, 1934. Letters of administration issued June 25, 1934 in Middlesex County, and his administrator's bond was approved on the same day.

The administrator's final account was allowed July 6, 1937. On June 21, 1935 a separate action was commenced in this Court on the note in question, entitled "Frederick S. Deitrick, Receiver, Federal National Bank of Boston v. Edward A. Counihan, Jr., Executor u/w of James S. Cassidy, Law No. 6475." This action was compromised for $1,000, duly paid to the receiver in return for a covenant not to sue.

An action was commenced on the certificate of deposit by Inman against Federal after both banks had closed their doors. In that action the defense was that the issuance of the certificate of deposit was not a real transaction, but was an attempt to lend the credit of Federal for the accommodation of Inman, and consequently beyond the powers of Federal. A judgment for the plaintiff in this case was sustained by the Supreme Judicial Court of Massachusetts, their opinion, reported as Inman Trust Company v. Federal National Bank of

Boston, 10 N.E.2d 201, being filed September 18, 1937.

■ To depart for a moment from the findings of fact, it may be said parenthetically that the judgment in that case is of course not res judicata as against these defendants, who were not parties thereto. The decision of the Supreme Court of the Commonwealth was not that the transaction was real, but that the question was one of fact, which the trial judge had resolved in favor of its reality. Upon the affidavits and exhibits here presented, the notes and certificates have the appearance of "shams intended to create an appearance of credit for the benefit of" Inman. But I need make no finding as to this, because I do not propose to base my conclusion upon the original validity or invalidity of the notes.

■ Concededly these actions are barred by the statute of limitations as to all defendants unless taken out of the statute by alleged payments on the notes. A part payment on an obligation, whether of principal or interest, ordinarily has the effect of taking the case out of the statute of limitations. According to the Massachusetts law, which here controls, the reason a part payment ordinarily tolls the statute of limitations is that it constitutes an acknowledgment of the whole debt, from which the law implies a promise to pay it. See Gillingham v. Brown, 178 Mass. 417, 60 N.E. 122, 55 L.R.A. 320; Markiewicz v. Toton, 292 Mass. 434, 198 N.E. 659; Day v. Mayo, 154 Mass. 472, 28 N.E. 898. To return to the findings of fact.

■ The affidavits and exhibits show and I find that Federal, wishing to make the two notes appear genuine, arranged an apparent payment of interest. A check for the required amount was made out by Federal and charged to a payment of interest on the certificate of deposit, which contained no provision for interest. This fictitious interest was computed at the same rate as that shown on the notes. A check was made payable to Fenderson, although at the time all persons concerned knew that the certificate of deposit had been negotiated to Inman. Fenderson deposited the check to his own account in Inman and immediately made out a check for the same amount, payable to Federal, which was endorsed by the latter two days later, at which time one-half the

amount of the check was endorsed as interest on the back of each note.

To the extent that the situation here presented warrants an inference of fact. I find as a fact that neither the endorsement on the back of the notes nor what was done prior thereto constituted any such part payment as is tantamount to an acknowledgment of the whole debt purporting to be represented by the notes. See Gillingham v. Brown, supra, and Wendell v. Clark, 240 Mass. 562, 134 N.E. 608.

If the whole question were deemed a matter of law and to present no question of fact, the same result is reached. As to the effect of a mere endorsement on the notes, see General Laws (Ter.Ed.) Chapter 260, Section 14. As to the effect of what preceded the endorsements, see Blanchard v. Blanchard, 122 Mass. 558, 23 Am.Rep. 397.

■ There is another question affecting all the defendants except Fenderson. That question is whether Fenderson was authorized by the other defendants or any of them to make any payments on their behalf.

### Findings of Fact with Reference to Fenderson's Authority to Make Alleged Payments on the Notes on Behalf of the Other Defendants.

The agreement between Fenderson and the other defendants, to which reference has already been had, provides that "The party of the first part covenants and agrees that all the income that may be received from the certificate of deposit or cash or securities that may be substituted therefor, shall be used to pay the interest that may be due from time to time on the two notes at (sic) thirty-five thousand (35,000) dollars each hereinbefore referred to."

As heretofore found, the certificate of deposit provided for the payment of no interest. I find nothing in this provision of the agreement authorizing Fenderson to make the kind of a payment, if such it was, upon the notes on behalf of the other defendants.

### Conclusions.

The actions cannot be maintained against any of the defendants because the statute of limitations was not tolled by any payment on the notes tantamount to

an acknowledgment of the supposed debt or debts represented by the notes.

The actions cannot be maintained against the defendants other than Fenderson for the additional reason that the alleged payments by Fenderson were not authorized by the other defendants. As to this branch of the cases, see General Laws (Ter.Ed.) Chapter 260, Section 15, providing: "A joint contractor * * * shall not lose the benefit of this chapter [the statute of limitations] so as to be chargeable by reason only of an acknowledgment or promise made or signed, or by reason of a payment made, by any other joint contractor."

See, also, Fletcher v. Sturtevant, 235 Mass. 249, 126 N.E. 428; Faulkner v. Bailey, 123 Mass. 588.

Judgment is to be entered for the defendants without costs.