RICHARD WOODACRE, JUNIOR, *vs.* ALBERT V. WOODACRE.

Bristol.    October 26, 1942. — May 26, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Equity Jurisdiction*, Accounting.    *Partnership*, Accounting.

Conclusions by a master based on all the evidence and not inconsistent with his subsidiary findings disclosed no error in charging the defendant for a specified amount in a suit for an accounting between partners, where it appeared that the defendant did all the bookkeeping for the partnership and that utter confusion existed therein due to his fraud or negligence.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated April 20, 1938.

The case was heard by *Walsh*, J.

*L. Stone*, (*F. Vera* with him,) for the defendant.

*F. A. Doyle*, (*A. P. Doyle* with him,) for the plaintiff.

DOLAN, J.    This is a bill in equity in which the plaintiff seeks an accounting, by the defendant, of the affairs of a partnership that had existed between the parties. The case was referred to a master, who filed his report, append-

ing thereto the objections of the defendant. The judge entered an interlocutory decree confirming the master's report; and a final decree was entered ordering the defendant to pay to the plaintiff $2,350.49, in accordance with a finding of the master. The defendant appealed from the final decree.

The report of the master stating the account between the parties covers sixty pages of the record. No useful purpose would be served by setting forth here the detailed account and the series of schedules contained therein, with which the parties are familiar, and the recital of which would add nothing to our jurisprudence. It will be sufficient to summarize briefly the findings of the master that are necessary to the proper disposition of the case. A summary of the material facts follows.

In 1929, the parties, who are brothers, formed an oral partnership at will for the conduct of a plumbing business, which they carried on as partners until March 28, 1938. Each of the parties devoted his full time to the business, which was conducted under the name of R. and A. V. Woodacre. The books of account were kept by the defendant at his home, where he did the bookkeeping at nights, on holidays and week-ends. The defendant also prepared most of the estimates for contracts and in general superintended the work. The plaintiff was engaged for the most part in "doing manual labor" in connection with the business. The partnership was dissolved on March 28, 1938, and each of the parties commenced doing business on his own account. In November, 1937, the parties had a disagreement and retained a public accountant, who examined the records of the partnership, starting with the books of account as of January 1, 1935. He made a painstaking report consisting of several schedules and accounts, which were introduced in evidence before the master. The master examined each book, customers' ledger, checking account, and tax returns of the partnership, as well as other evidence, in arriving at his conclusions. The public accountant before referred to testified before the master. He testified that "if the partnership checking account

were used to pay out obligations owed by either partner personally, unless this payment were shown on the partnership cash book of account as paid out, it was not charged to the partnership." The master states that he followed this method "of accounting in dealing with all issues in this case which are involved both before and after January 1, 1935, except where the evidence clearly shows that there should be made an exception to the application of this principle." The master further found that it was the custom of the defendant "to keep records of figures for material furnished on a particular contract or job, and the hours of labor spent by the partners or partnership employees, on slips of paper until such time as the job was finished when he copied these items into a book called the customers' ledger book. Sometimes these items were never copied into the customers' ledger book but were kept upon slips of paper until after the customer had paid his bill. Then the amount received might sometimes be put down in the cash book, but usually and in practically all cases was put down on the customers' ledger in a lump sum. His practice varied as to this system. The partnership had a customers' ledger and a cash book. The defendant sent away and obtained an accounting system which included a correspondence course. The defendant was unable to understand the instructions. A green day book was sent to him along with the books of account, but he did not use the day book because he did not understand it. Later he used the green day book to put down the items which he had kept on slips of paper. During the year 1934, a new customers' ledger book was used. Old accounts outstanding in 1933 were copied by the defendant into the customers' records. The customers' ledger was usually credited with a receipt from the customers, but the receipt of cash was not always entered into the partnership cash book. The partnership cash book was used both for collections from customers and for payments by the partnership until January 1, 1937. Thereafter, two cash books were used, one for receipts and the other for expenditures. In some instances, when a customer paid a bill, the cash book would be

credited but the customer's account on the ledger would not be credited. Occasionally, a customer's account in the customers' ledger book would be credited with a payment of an amount of money and the cash book would be credited with a receipt from this customer of a lesser amount. Each year, some sort of financial statement was made up, the figures prepared and given to a lawyer, who made out . . . the income tax returns for the partnership. It does not appear that the plaintiff ever saw these annual financial statements or ever saw the figures given to the attorney, or that he ever signed the income tax returns during the period while the partnership was in force and effect. There was evidence that the defendant used the total receipts taken from the cash book and the total payments listed in the cash book as the basis for making out such reports annually for the income tax returns. The defendant . . . used the partnership checking account to pay many of his own personal obligations. When the defendant went over the books of account periodically, prior to the time when the accountant inspected them, he made erasures on the cash books, marked over figures and inserted different names. A good many figures in the cash book were erased. Some of the marks in the cash book were pencil marks; some were pen marks. Wrong totals were used at the end of each year in computing figures. Some expenses or totals were put down twice. Following the year 1937 in the firm's expense book appear a list of expenses captioned, 'additional expenses found 1937 after checking through check book.' " The defendant conducted the business of the firm and made entries in the books of account in utter disregard of the rights of the plaintiff. Through fraud or negligence he failed to exercise that degree of good faith owed by one partner to another. The master reported that it was impossible for him to reconstruct the books of account of the partnership in view of alterations, changes and erasures made by the defendant.

It would be of no value to set forth here the master's finding with relation to the various schedules contained in his

report. Under some, the master found that it had not been shown that anything was due from the defendant to the firm, under others, that the defendant was indebted to the firm, and, under still others, he allowed the defendant credits. The ultimate finding of the master is that the defendant owes the firm $4,842.21, that the plaintiff owes it $141.23, the total owed thus being $4,983.44; that as between the parties each owed the other one half of his liability to the firm, that is, the defendant owed the plaintiff $2,421.11, and the plaintiff owed the defendant $70.62, the balance in favor of the plaintiff being $2,350.49. It is this sum that the defendant was ordered to pay the plaintiff in the final decree entered in the court below.

The real controversy in the case centers around the finding of the master that the defendant owes the firm $1,577.42 under schedule A, representing amounts collected by the defendant from third persons indebted to the firm, and the disallowance by the master of credit to the defendant of $3,526.67 paid in satisfaction of partnership bills over the same period of time, but not entered in the cash book. But as to this latter sum there was no evidence that any money was borrowed to pay these bills of the partnership, or that either the defendant or the plaintiff paid them out of his own pocket. Accordingly, the master found that they were paid out of partnership funds. The difference between the amounts received by the defendant but not entered in the cash book ($1,577.42) and the amounts paid out but not entered therein ($3,526.67) is $1,949.25. The master did not find that any part of the $1,577.42 was used to pay the bills of the firm, since it was a fair inference that there "was ample money in the form of a surplus in the partnership account during . . . [the period involved], without giving effect to any collection of any items not entered in the cash book as collected" during that period. The master further found that upon all the evidence with respect to this issue he was not satisfied that the defendant was entitled to credit for any of these bills which he contended he paid and did not enter on the cash book; and that he had not sustained the burden resting upon him of proving that he personally should

be entitled to a credit for any sums paid out of partnership funds but not entered in the cash book.

The grounds of the defendant's complaints are as follows: He contends that the master used the cash book method in behalf of the plaintiff in determining the indebtedness of the defendant to the firm, but abandoned it and used the partnership ledger, checking account, and income tax returns as the basis for denying the defendant credit for $3,526.67 and likewise with respect to similar items; that he is being charged twice with the amount of $1,577.42; and that the master's findings as to the source of the amount of $3,526.67 credit that was denied him are based on supposition and conjecture.

We are unable to concur in these contentions of the defendant. It is to be observed that the master stated in his report that he adopted the cash book method "except where the evidence clearly shows that there should be made an exception to the application of this principle." The master based his conclusions upon all the evidence presented before him, and not all the evidence is reported. Hence his conclusions or ultimate findings must stand unless subsidiary facts found by him are sufficient in themselves to demonstrate that the ultimate findings could not be justified upon any evidence that he might have received. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431, 435, 436, and cases cited. In the present case we see no reason for disturbing the ultimate conclusions of the master stated to be based upon all the evidence.

With respect to the objections of the defendant to methods employed by the master in stating the account the answer is that "Where one assumes the duty of keeping the books, reasonable presumptions are made against him when he disputes their accuracy. . . . But this means a set of books which was a reasonably correct representation of the firm's affairs. It . . . [does] not mean books so full of palpable mistakes and grave errors as to be manifestly untrustworthy and incapable of showing justly the affairs of the firm. Under the circumstances disclosed, the only course open was to correct the errors so far as possible,

and from all credible evidence ascertain the true condition of the firm. This was the course pursued by the master. . . . If the books could not be relied on in this respect, the only thing to do was to take the best evidence available as to the true state of the account." *Hurter* v. *Larrabee,* 224 Mass. 218, 221–222. That is what the master properly did in this case, where almost utter confusion existed in the accounts due to the "fraud or negligence" of the defendant. See also *Hutchins* v. *Page,* 204 Mass. 284, 287, 288.

The interlocutory decree confirming the master's report is to be modified by inserting an order overruling the defendant's exceptions to the master's report, and as so modified is affirmed. The final decree is affirmed with costs.

*Ordered accordingly.*