BENJAMIN A. CAVAZZA & another *vs.* CLEMENT F.
CAVAZZA & others.

Berkshire.     September 19, 1944. — October 26, 1944.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Equity Pleading and Practice*, Master: exceptions to report, findings.
*Agency*, Agent's duty of fidelity. *Partnership*, Accounting.

A single exception to a master's report, stated to be "to the rulings of
the master on the questions and answers which appear more specifi-
cally in . . . [a schedule] attached to the master's report, for the
reason that the master erred in his several rulings in . . . excluding
. . . such testimony," properly was overruled because it was of an
omnibus character and failed to set forth objections specifically ad-
dressed to particular questions of evidence.

An exception to a master's finding on unreported evidence in a suit in
equity, that an agent for the proprietor of a store committed a breach
of his fiduciary duty to his principal in that he spent the major part
of his time in the conduct of another business, but that his principal
suffered no damage thereby since there were no profits from the
principal's store, properly was overruled where the findings read as a
whole were in substance that the activities of the agent in the other
business did not result in any diminution of profits that otherwise
would have been earned by the principal's store.

Exceptions to a master's conclusions in a suit in equity on the ground
that they were not supported by his subsidiary findings were over-
ruled where on a reasonable interpretation of the whole report the
conclusions were not based wholly on the subsidiary findings but
on evidence not reported nor summarized in the record and were not
inconsistent with the subsidiary findings.

An exception to the failure of a master, to whom was referred a suit
seeking an accounting of partnership affairs after the death of a part-
ner, to report a finding as to the value of the partner's interest, was
sustained where, although he found that he "was unable to deter-
mine" such interest "in view of . . . [the] state of the evidence,"
he made certain subsidiary findings as to the partnership assets and
liabilities which did not show that, in general, no value whatever
might be placed on the interest of the deceased partner, or, in par-
ticular, that certain bills receivable, described by him but not valued,
were incapable of valuation, and it appeared that the surviving part-
ner was still operating the business.

BILL IN EQUITY, filed in the Superior Court on January 2,
1942.

The suit was heard by *Burns,* J., after the filing of a master's report.

*C. Fairhurst,* (*E. N. Gadsby* with him,) for the plaintiffs.

*J. N. Alberti,* (*W. J. Donovan* with him,) for the defendants.

WILKINS, J.  This bill in equity, brought by two heirs at law of Louise Cavazza, formerly a partner in the firm of "Cavazza & Montagna," seeks under G. L. (Ter. Ed.) c. 230, § 5, as amended by St. 1934, c. 116, to enforce claims for the benefit of the estate of Louise Cavazza and asks for an accounting.  The defendants are O. Dixon Marshall, the administrator de bonis non of the estate; Clement F. Cavazza, also an heir at law; Amelia Montagna, the surviving partner; and two of her sons, John Montagna and Hugo Montagna.  The case was referred to a master, who filed a report.  The plaintiffs brought in objections, which became exceptions, to the report.  Rule 90 of the Superior Court (1932).  The "objections" (exceptions) were overruled and the master's report was confirmed by an interlocutory decree.  A final decree was entered dismissing the bill of complaint.  The plaintiffs appealed from both decrees.

The following appears from the master's report.  Louise Cavazza died June 6, 1940, leaving no husband and five children, two of whom are the plaintiffs and one of whom is a defendant.  The administrator of her estate refused to bring this suit.  About 1900 Andrew Cavazza, the husband of Louise Cavazza, and Angelo Montagna formed a partnership to conduct a grocery business at 139 State Street, North Adams, under the name of "Cavazza & Montagna." In 1918 Andrew Cavazza died, and the business was conducted by Angelo Montagna and Louise Cavazza until 1929, when Angelo Montagna died, leaving three sons. Thereafter until the death of Louise Cavazza the business was conducted for the two widows by the defendants Clement F. Cavazza and John Montagna.  It was a strictly two-family affair, and no one ever worked for the partnership except members of the two families, all of whom except the two widows, who were inactive, at one time or

another did so. In 1932 the defendant Clement F. Cavazza, his brother Benjamin, the defendants John and Hugo Montagna, and their brother Thomas, acquired title to the building in which the grocery store was located. The building consisted of one-story stores and apartments. In 1933 a "near beer" business, soon becoming a package store, was started in one of the stores adjacent to and opening into that in which the grocery business was located. The plaintiffs contended before the master that the package store, which at first was operated under the name of "Cavazza & Montagna," and after May, 1934, as "C & M Package Store," was a part of the grocery business and was owned by the partnership. The master's report, after reciting in much detail the contentions of the parties, summarizing evidence, and making many findings as to the methods of running the two businesses, contained the following: "Upon all the evidence and the facts set forth above, I find that the original capital for both the near beer business and the package store business was supplied by John Montagna and Clement Cavazza. . . . I find that the liquor business was not an expansion of the grocery business but that the package store was a separate business in which Amelia Montagna and Louise Cavazza had no partnership interest. Furthermore I find that there was no authority express or implied from the partners or either of them to John Montagna or Clement Cavazza so to expand the partnership business." In 1939 the defendant Hugo Montagna acquired a one quarter interest in the package store by written agreement with the defendants Clement F. Cavazza and John Montagna, who thereafter respectively held a one half interest and a one quarter interest.

The general finding that Louise Cavazza had no interest in the package store must stand. The evidence is not reported, and the facts found on this issue are not mutually inconsistent nor plainly wrong. *Smith v. Knapp*, 297 Mass. 466, 469. *Meeker* v. *Oszust*, 307 Mass. 366, 371. Indeed the plaintiffs do not seriously question this. Their present contention in respect to the package store is that the master should have permitted them to ask the defendant Cavazza,

when called as a witness by them, numerous questions as to certain Federal income tax returns of the partnership, copies of which were shown the witness and offered in evidence. The master "admitted" them only for the purpose of refreshing the witness's recollection. The plaintiffs' tenth exception to the master's report on which they rely as raising this point is "to the rulings of the master on the questions and answers which appear more specifically in . . . [a schedule] attached to the master's report, for the reason that the master erred in his several rulings in . . . excluding . . . such testimony which . . . was competent, relevant and material evidence." This exception was properly overruled. It was of an omnibus character, and failed to make "objection, specifically addressed to the particular question of evidence, brought in under Rule 90 of the Superior Court (1932)." *Meehan* v. *North Adams Savings Bank*, 302 Mass. 357, 363, and cases cited. We make no intimation as to the admissibility of the evidence.

The plaintiffs' other exceptions not expressly waived relate to the grocery store. Lacking report of the evidence the plaintiffs rightly do not argue them in so far as they allege that findings were not supported by evidence. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435. It is, however, open to them to contend, as they do, that ultimate findings are inconsistent with subsidiary findings. *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24.

The plaintiffs ask that the defendants Clement F. Cavazza and John Montagna as fiduciaries account to the surviving partner for various items including damages for breach of trust; that the value of the partnership assets be established; and that the defendant Amelia Montagna as surviving partner pay to the estate of Louise Cavazza one half of such value with interest from the date of death.

The partnership was dissolved by the death of Louise Cavazza. *Wolbach* v. *Commissioner of Corporations & Taxation*, 268 Mass. 365, 368. *State Street Trust Co.* v. *Hall*, 311 Mass. 299, 302. G. L. (Ter. Ed.) c. 108A, § 31. "The surviving partner thereupon became vested with title to the property of the firm and was bound to account for its

application to the payment of firm debts and to the settlement of the partnership accounts. *Wellman* v. *North*, 256 Mass. 496, 501, and cases there cited." *Hawkes* v. *First National Bank*, 264 Mass. 545, 547. *Malden Trust Co.* v. *Brooks*, 291 Mass. 273, 281. G. L. (Ter. Ed.) c. 108A, § 25 (2) (d).

A power of attorney, given by the widows July 18, 1932, stated that the partners were engaged under the name of "Cavazza & Montagna" in the wholesale and retail grocery, fruit, and produce business, and authorized the defendants Clement F. Cavazza and John Montagna to buy and sell merchandise, to deal with negotiable paper, to receive and apply the proceeds "for the partnership purposes or for such purposes as we shall direct," and "generally to act as our attorney or attorneys in relation to said partnership business and all other matters in which the partnership may be interested or concerned and on behalf of said partnership to execute all such instruments and do all such acts and things as fully and effectually in all respects as we could do if personally present." The master found that in addition "Clement Cavazza was the agent of his mother to represent her interests and act in her behalf and that John Montagna stood in like capacity to his mother. Other than as set forth in the written power of attorney . . . Clement Cavazza was not the agent for the partnership. I find that as such agent for his mother and particularly in view of her entire trust in him, Clement Cavazza acted for his mother in a fiduciary capacity. I find that whatever may have been the situation at first, gradually the package store became of primary importance and Clement spent the major part of his time operating it. I find that his acts in personally operating the package store while at the same time he was conducting the grocery business as agent for his mother [were] a breach of his duty as such agent. . . . I find that there were no profits from the grocery store which should have been distributed to the partners and I, therefore, find that though Clement Cavazza committed a breach of his fiduciary duty to his mother, Louise Cavazza suffered no damage thereby. Likewise I find that no damage was done

to the partnership by the acts of said Clement Cavazza."
The plaintiffs attack the conclusions in the last two sentences
as unsupported by subsidiary findings.[1]    It is particularly
stressed that the finding of no profits is plainly wrong in
view of numerous statements by the master as to the im-
possibility or difficulty in checking or determining various
important items involved in the accounting.    The master,
however, stated elsewhere in his report, "I find that there
has been a general falling off of the grocery store business
but I am unable to find this was caused by the operation of
the package store."    The partners had weekly drawing
accounts of $15 each, and received groceries for which they
did not pay.    Rent was not always collected from the
grocery store but was collected from the package store.
Read as a whole, the master's findings were in substance
that the liquor store activities of the defendant Clement F.
Cavazza did not result in any diminution of profits which
otherwise would have been earned by the grocery store, and
which, if earned, should have been distributed to the part-
ners.    As appears more fully hereinafter, the references to
the difficulties arising from the ineptness and incomplete-
ness of the bookkeeping were not the sole basis for the gen-
eral findings including the finding that there were no profits
of the grocery store.    *Woodacre* v. *Woodacre*, 314 Mass.
70, 75.    The plaintiffs' eighth exception was rightly over-
ruled.

The plaintiffs question numerous findings relative to the
accounts of the grocery store with the liquor store.    One
of these is the "exchange" account of the grocery store.
"This meant that when a member of the family or a third
party wished to make a payment by check of an account
unconnected with the business, the check would be drawn
on either the grocery store or the package store account and

---

[1] This was the eighth exception to the master's report.    The exceptions
1 to 8, inclusive, were stated to be for the following reasons:  "(a) That the
evidence was insufficient in law to support the several findings;  (b) that the
subsidiary facts found by the master and set forth in his report do not jus-
tify the final finding of fact;  (c) that the final finding of fact is inconsistent
with the subsidiary facts found by the master and set forth in his report;
(d) that the subsidiary facts found by the master and set forth in his report
do not support the ultimate finding of fact." — REPORTER.

the person for whose benefit the check was drawn paid the amount in cash to the store." The master found that the exchange items of the grocery store from 1934 through 1939 amounted to $6,204.07. The plaintiffs attack the general finding that "these items were substantially repaid" for the reason that the master previously had found that "while in some cases it is possible to check the payment of the exchange items against deposits, in most cases it is impossible to do so." The general finding, however, was not based on the earlier finding. Nor are the findings inconsistent, as the master could have reached his conclusion from other evidence than checking payments against deposits. The first exception to the master's report was properly overruled.

Another challenged finding relating to the accounts of the two stores is: "I find that while the accounts are confused and were kept in a somewhat careless manner, they were kept substantially separate and I also find that the cash transactions of both stores were kept substantially separate." This finding is not rendered nugatory by the numerous other findings which recount the difficulties presented by the inefficiency of the bookkeeping. Rightly construed, it is an independent finding based on the evidence as a whole and not resting upon a self-collapsing foundation of conjecture and surmise. The judge was right in overruling the plaintiffs' second exception to the master's report.

The master's report shows the following: Both the grocery store and the package store made payments for the account of the other. The package store made direct loans of $2,840 to the grocery store. It also made payments of bills of the grocery store, which were entered on the account books as "advances." Apparently for these reasons the grocery store made salary payments for the account of the package store to the employees, all of whom worked in both stores. The total amount of salaries paid from January 1, 1933, to June 6, 1940, was $38,327. There was a conflict in the evidence, unresolved by any finding, as to which store paid $3,016 of the salaries for 1935. The master found: "Taking the evidence in the view most favorable to the petitioners, it appears that of this amount [$38,327]

$3,400 was paid by the package store and $34,927 by the grocery. . . . A great many of the bills claimed to have been paid for the grocery store by the package store cannot now be checked as in most instances there is no notation on the check stub and in many cases both the package store and the grocery has [sic] accounts with the same dealer. There was, however, no evidence to the contrary and I find that the amount so paid by the package store to be $26,482.84. (See petitioners' Exhibit 93 and respondents' Exhibit 99), making a total sum due from the grocery to the package store of $29,332.74. [This figure should be $29,322.84.] Offsetting the amount of wages paid by the grocery store against the loans and advances made by the package store, there is a balance in favor of the grocery of $5,594.26. This however makes no allowance for any wages due from the grocery which for the period involved January 1, 1933 to June 6, 1940 could hardly be as small as $5,594,26. Or to put it another way, assuming that the package store should have paid as much as 75% of all the wages paid, this would amount to $28,745.25. Of this the package store paid $3,400, leaving a balance which should have been paid by the package store of $25,345.25. This subtracted from the amount of the loans and advancements leaves a balance of $3,987.49 in favor of the package store. . . . I find that whatever credit the grocery store has against the package store on account of the payment of wages is more than offset by the amount owing from the grocery to the package store on account of loans and advances." The finding that $26,482.84 was paid by the package store is not vitiated by the statement that the bills could not be checked or by any of the other findings. It does not purport to have been based on any ability to check or solely on the absence of evidence to the contrary. It refers to two exhibits which are not in the record, and it well could be an acceptance of testimony as to the amounts "claimed to have been paid for the grocery store by the package store," even though such testimony could not be corroborated by any "check." The findings in substance to the effect that the grocery store owed the package store

more than it was owed by the package store were made on the unreported evidence and do not purport to be, and on reasonable interpretation of the entire report were not, based wholly on other findings. They must stand. There, accordingly, was no error in overruling the plaintiffs' fifth, sixth, and seventh exceptions to the master's report.

The plaintiffs' ninth exception is to the finding, "In view of this state of the evidence, I am unable to determine the value of the partners' interest in the grocery business and I make no finding thereon." The master found the assets of the grocery store to be cash $45.49; bank account $222.68; inventory $4,232.88; furniture and fixtures $537; accounts receivable, ledger $3,204.23, McCaskey Register $5,187.60, Benjamin Cavazza $2,149.96, Clement Cavazza $1,596.46, Victor Agostini (husband of one of the plaintiffs) $1,265; grand total $18,441.30. The report stated, "Of the liabilities there were accounts payable in the amount of $3,747.43. There were also claimed to be sums due on account of back wages and on account of advancements and loans made by the package store to and for the benefit of the grocery store [elsewhere found to be $2,840], less the amount of wages paid for the package store by the grocery store. The amount of these sums was in dispute and as has been stated before, it is now impossible to determine just what they should be. Furthermore, the accounts receivable shown above are at 100% of face value. The appraiser [of the estate of Louise Cavazza] reduced these by 25% in arriving at his valuation [of $14.50 for Louise Cavazza's interest in the partnership] but there was no evidence introduced either to show that any of these accounts had been subsequently collected or from which to form the basis for making a fair valuation of them. Finally I was advised that there is now pending a suit in the Superior Court against Benjamin Cavazza on account of his bill." This "state of the evidence" does not excuse the master from performing his full duty in finding all the facts, one of which is the value of the partnership assets. *Cappy's, Inc.* v. *Dorgan,* 313 Mass. 170, 175. It is contended by the defendants that the partnership is insolvent. If this be the fact, it has not been so

found.  The subsidiary facts found do not show that, in general, no value whatsoever may be placed on the interest of Louise Cavazza in the partnership, or, in particular, that the bills receivable, three of which are of members of the two interested families, are incapable of valuation.  In view of the master's stated reason for not making a finding, cases like *Wendell* v. *Clark*, 240 Mass. 562, 566, and *Cole* v. *Holton*, 272 Mass. 565, 571, relied upon by the defendants, are distinguishable.  This is not an instance where the master made the best finding he could on the evidence.  See *Hawkes* v. *First National Bank*, 264 Mass. 538, 544.  He made no finding, and assigned an insufficient reason for his inaction. It is alleged in the bill of complaint, filed January 2, 1942, and admitted in the answer, that the defendant Amelia Montagna was then conducting the grocery business.  There is no finding that she later ceased to do so.  The inference is that she is still operating the store.  Compare *Murray* v. *Bateman*, 315 Mass. 113, 116.  This is the plaintiffs' only day in court.  *Hutchinson* v. *Nay*, 187 Mass. 262, 263. This exception to the master's report should have been sustained.  It still leaves the case without a finding of sufficient facts on a material issue.  *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 224.

No answer was filed for the defendant administrator or the defendant administrator de bonis non of the estate of Louise Cavazza, although there was a general appearance for the defendants.  The defendant administrator de bonis non should file an answer, or the bill of complaint should be taken pro confesso as to him.

The interlocutory decree must be modified by sustaining the plaintiffs' ninth exception to the master's report.  The case should be recommitted to the master for a finding as to the valuation of the partnership and for such further findings as thereby may be rendered necessary.  The final decree is reversed with costs of this appeal against the defendants other than the administrator de bonis non.

*So ordered.*